[No. B066660. Second Dist., Div. Three. Aug. 31, 1994.]

JEHAN ZEB MIR, Plaintiff and Respondent, v.
CHARTER SUBURBAN HOSPITAL, Defendant and Appellant.

**COUNSEL**

Weissburg & Aronson, Lowell C. Brown and Shirley J. Paine for Defendant and Appellant.

Jeffer, Mangels, Butler & Marmaro, Suzanne F. van Hall and Neil O. Andrus as Amici Curiae on behalf of Defendant and Appellant.

Russell Iungerich and Paul Spackman for Plaintiff and Respondent.

Catherine I. Hanson and Kimberly S. Davenport as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

KLEIN, P. J.—Defendant and appellant Charter Suburban Hospital (Hospital) appeals a postjudgment order awarding plaintiff and respondent Jehan Zeb Mir, M.D. (Mir) $45,205 in attorney fees under Business and Professions Code section 809.9.[1]

The essential issue presented in this case of first impression is whether a physician who succeeds on mandamus (Code Civ. Proc. § 1094.5) in overturning a disciplinary action by a hospital on the grounds of insufficient evidence is necessarily entitled to recover costs, including attorney fees, under section 809.9.[2, 3]

Merely because the trial court on mandamus found no substantial evidence to support the Hospital's disciplinary decision and the appellate court affirmed does not establish the Hospital's defense to the petition for writ of mandate or its appeal thereafter was frivolous, unreasonable, without foundation, or in bad faith, which conduct is a prerequisite to recovery under section 809.9. The order therefore is reversed with directions.

---

[1]All statutory references herein are to the Business and Professions Code, unless otherwise specified.

[2]The California Association of Hospitals and Health Systems (Hospital Association) and the California Medical Association have filed amicus curiae briefs in support of the Hospital and Mir, respectively.

[3]Section 809.9 states: "In any suit brought to challenge an action taken or a restriction imposed which is required to be reported pursuant to Section 805, the court shall, at the conclusion of the action [i.e., the suit], award to a substantially prevailing party the cost of the suit, including a reasonable attorney's fee, if the other party's conduct in bringing, defending, or litigating the suit was frivolous, unreasonable, without foundation, or in bad faith. For the purposes of this section, a defendant shall not be considered to have substantially prevailed when the plaintiff obtains an award for damages or permanent injunctive or declaratory relief. For the purpose of this section, a plaintiff shall not be considered to have substantially prevailed when the plaintiff does not obtain an award of damages or permanent injunctive or declaratory relief."

Section 809.9 makes reference to matters required to be reported pursuant to section 805, i.e., to written reports known as "805 reports." Subdivision (b) of section 805 states in relevant part: "The chief of staff of a medical or professional staff or other chief executive officer, medical director, or administrator of any peer review body and the chief executive officer or administrator of any licensed health care facility or clinic shall file an 805 report with the relevant agency whenever any of the following actions are taken as a result of a determination of a peer review body: [¶] . . . [¶] (3) Restrictions are imposed, or voluntarily accepted, on staff privileges, membership, or employment for a cumulative total of 30 days or more for any 12-month period, for a medical disciplinary cause or reason."

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The peer review proceedings.*

Mir is a physician licensed to practice medicine in California and is a Board-certified cardiovascular and thoracic surgeon. He became a member of the medical staff of the Hospital, and in 1986 was given full privileges in cardiovascular and thoracic surgery and in general surgery.

On June 10, 1988, the hospital's medical executive committee filed a statement of charges against Mir and recommended his hospital privileges be terminated. Thereafter, three physician committee members of the Hospital's judicial review committee heard evidence, including the testimony of an independent expert, concerning the charges against Mir. In December 1988, the judicial review committee rendered its findings and decision, found against Mir only on one of the charges involving a particular patient, and recommended Mir be placed on probation for his next ten major abdominal or thoracic surgeries and his next six endoscopies performed at the Hospital.

Mir petitioned the Hospital's board of directors (Board) for review of the findings and decision of the judicial review committee.

On April 6, 1989, Mir was served with notice the Board had reviewed his case and upheld the recommendations of the judicial review committee. The Board found the Hospital's bylaws had been complied with regarding the bringing and hearing of charges against Mir so that fair procedure was had. The Board further found the judicial review committee's recommendations were not arbitrary, capricious, or unreasonable because they were supported by substantial evidence in light of the whole record. The decision of the Board was final and effective immediately. The discipline recommended by the judicial review committee was imposed on Mir and an "805 report" was filed with the appropriate state agency.

### 2. *Mir's petition for writ of administrative mandate.*

Thereafter, Mir filed a petition for administrative mandamus relief. (Code Civ. Proc., § 1094.5.) Mir contended the Hospital had not applied its own standards for corrective action. He further averred there was no substantial evidence to support the corrective action taken against him and the findings made by the judicial review committee. Mir prayed for a writ ordering the Hospital to vacate its disciplinary decision against him and to restore his full staff privileges.

After a hearing on the petition, the trial court took the matter under submission and on January 10, 1990, issued its ruling. The trial court granted

the writ, finding "there [was] no substantial evidence that anyone could have done any better . . . than [Mir]," and the determination of poor medical judgment could not stand.

### 3. *The Hospital's appeal.*

The Hospital appealed. Using the "substantial evidence in the light of the whole record" test required by Code of Civil Procedure section 1094.5, subdivision (d), the same standard required of the trial court, Division Two of this court affirmed in an unpublished decision. (*Mir* v. *Charter Suburban Hospital* (Oct. 22, 1991) B049830 [nonpub. opn.].)

The Supreme Court denied review.

### 4. *Mir's subsequent motion under section 809.9.*

Following the resolution of the appeal, Mir filed a motion in the trial court for an order awarding attorney fees under section 809.9. Relying on the trial court's finding of a lack of substantial evidence and the appellate court's affirmance, Mir contended the Hospital's conduct in disciplining him and later in defending that discipline was unreasonable and without foundation.

The trial court granted the motion, ruling the Hospital opposed mandamus "unreasonabl[y] and without foundation," and ordered the Hospital to pay Mir's attorney fees in the amount of $45,205.

The Hospital appeals that order.

CONTENTIONS

The Hospital contends: (1) section 809.9 did not take effect until after the Hospital's decision became final and the trial court erred in applying it retroactively; (2) section 809.9 does not apply because Mir cannot properly be considered a "substantially prevailing party" in that he did not seek, nor did he obtain, damages, permanent injunctive relief or declaratory relief; (3) merely because the adverse disciplinary action was overturned does not establish the Hospital's decision to defend the section 1094.5 proceeding was frivolous, unreasonable, without foundation or in bad faith; and (4) affirmance of the trial court's order awarding Mir attorney fees would impair the ability of hospital medical staffs to protect patients through the peer review process.

## Discussion

1. *The retroactivity issue.*

 a. *General principles.*

Several rules regarding the application of newly enacted legislation are at issue here. ■ First, a new statute is not to be given retroactive application unless it clearly appears the Legislature so intended. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) ■ Second, whether a particular cost, including attorney fees, is allowed to a litigant depends on the terms of the statute which is in force at the time the judgment is rendered, not on law which existed when the suit was commenced. (*Hogan* v. *Ingold* (1952) 38 Cal.2d 802, 814-815 [243 P.2d 1, 32 A.L.R.2d 834]; *Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 477 [304 P.2d 7].) However, this second rule does not govern if a provision in the new legislation clearly indicates the Legislature's intent such costs will not be recoverable in actions pending when the new statute becomes operative. (*Hogan* v. *Ingold, supra*, 38 Cal.2d at p. 815.) Application to pending suits of new statutes regarding costs is not regarded as giving retroactive effect to such legislation. (*Id.*, at p. 814.)

 b. *Section 809.9 applies to actions pending on its operative date.*

■ In *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200], plaintiffs initially lost their action in the trial court but prevailed on appeal, and the case was sent back for further proceedings. Upon remand, plaintiffs filed a motion in the trial court for attorney fees. At that time, no statutory provision supported their motion, but the plaintiffs argued fees could be awarded under either a "substantial benefit" theory or a "private attorney general" theory. The trial court denied the motion and plaintiffs appealed.

While that case was on appeal, the Legislature enacted section 1021.5 of the Code of Civil Procedure, which provides explicit authority for awards of attorney fees under a private attorney general theory. That legislation became effective while the plaintiffs' attorney fees appeal was still pending. The Supreme Court held the new legislation was applicable to cases pending on appeal when the statute took effect. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d at p. 931; see also, *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124].)

Thus, section 809.9 is potentially applicable to the case at bench. The operative date of the enactment was January 1, 1990, and the trial court issued its ruling in favor of Mir on the writ petition on January 10, 1990.

There is no merit to the Hospital's contention section 809.9 indicates the Legislature did not intend the statute to apply to actions pending on its operative date. The mere fact section 809.9 became "operative" on January 1, 1990, simply indicates *when* trial courts could apply the new statute.

We also reject the Hospital's assertion that if section 809.9 applies to this case, it only applies to attorney fees which Mir incurred after the section became operative, i.e., after January 1, 1990. Nothing in section 809.9 supports such an argument. Further, in *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, the litigants were allowed to seek recovery of attorney fees they incurred at the trial level pursuant to newly enacted Code of Civil Procedure section 1021.5, even though the statute was not enacted until the case was on appeal.

In sum, section 809.9 is fully applicable to actions which were pending on its effective date.

2. *The "substantially prevailing party" issue.*

 Mir and the Hospital espouse greatly different interpretations of the statute.

Based on his success in setting aside the adverse disciplinary action, Mir contends he was a substantially prevailing party in the mandate proceeding.

The Hospital and amicus Hospital Association argue section 809.9 cannot be applicable to this case because the statute defines a substantially prevailing party as one who has obtained an award of damages, permanent injunctive relief or declaratory relief (§ 809.9), and Mir did not obtain any such relief on mandamus.

For the reasons stated below, we reject the Hospital's argument and conclude Mir was a substantially prevailing party under section 809.9 because he obtained what amounted to declaratory relief from the superior court on administrative mandamus.

Amicus Hospital Association relies on cases which hold that suits for declaratory or injunctive relief are not proper vehicles for challenging administrative decisions. (See, e.g., *Hill* v. *City of Manhattan Beach* (1971) 6 Cal.3d 279, 287 [98 Cal.Rptr. 785, 491 P.2d 369]; *Viso* v. *State of California* (1979) 92 Cal.App.3d 15, 21 [154 Cal.Rptr. 580].)

While that is a correct statement of the law, it does not meet the issue. When administrative mandamus relief is sought, a plaintiff is in effect

seeking declaratory relief. In *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 544 [99 Cal.Rptr. 745, 492 P.2d 1137], the plaintiffs filed a declaratory relief action to set aside a city's grant of a conditional use permit. The Supreme Court noted that "[r]eview of planning commission proceedings regarding a conditional use permit is appropriate under Code of Civil Procedure, section 1094.5[,]" rather than by way of a declaratory relief action. (*Id.*, at p. 546.) However, "it [was] unimportant that [the] pleading was not in form a petition for mandamus[,]" as *"an action for declaratory relief to review an administrative order should be regarded as a petition for writ of mandate* for purposes of ruling upon a general demurrer." (*Ibid.*, italics added; accord, *Hill* v. *City of Manhattan Beach*, *supra*, 6 Cal.3d at p. 287.)

Thus, a petition for writ of mandate to review an administrative decision in effect seeks declaratory relief as to the rights of the parties. Consequently, a petitioner who prevails on mandamus in setting aside a hospital's disciplinary decision is entitled at that juncture to seek attorney fees under section 809.9.

Nonetheless, relying on *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], the Hospital contends that in cases arising from medical staff peer review decisions, a party may not seek damages or permanent injunctive or declaratory relief without first prevailing in a mandate action.

In that regard, *Westlake* simply holds "whenever a hospital, pursuant to a quasi-judicial proceeding, reaches a decision to deny staff privileges, an aggrieved doctor must first succeed in setting aside the quasi-judicial decision in a mandamus action *before he may institute a tort action for damages.*" (*Westlake Community Hosp.* v. *Superior Court*, *supra*, 17 Cal.3d at p. 469, italics added.)

Once a physician has prevailed on mandamus and succeeded in setting aside a hospital's adverse decision, recovery of attorney fees under section 809.9 at the conclusion of the mandamus proceeding is not inconsistent with *Westlake.*

Further, the bringing of a motion for attorney fees pursuant to section 809.9 *at the conclusion of a mandamus proceeding* is proper because a petition for writ of administrative mandate is a "suit" for challenging a

disciplinary action or restriction reportable under section 805.[4] While the Hospital contends a motion under section 809.9 must await a *Westlake* action, a *Westlake* action is *not* a "suit . . . to challenge an action taken or a restriction . . . required to be reported pursuant to Section 805." (§ 809.9.) The adverse disciplinary action or restriction will have been set aside prior to the *Westlake* action, in a mandate proceeding, as a *prerequisite* to the bringing of a *Westlake* suit.

With respect to the applicability of section 809.9 to mandamus proceedings, we further observe "petitioner" on mandamus is synonymous with "plaintiff" (Code Civ. Proc., § 1063). Therefore, we attach no significance to the fact section 809.9 fails to utilize the term "petitioner" and that it simply authorizes an award of attorney fees to a successful "plaintiff."

Under the Hospital's interpretation, a litigant such as Mir would have to file a *Westlake* action to recover attorney fees incurred in prosecuting the mandamus proceeding. Not only is such an approach at odds with section 809.9's provision for an award of attorney fees "[i]n any suit brought to challenge an action taken or a restriction imposed which is required to be reported pursuant to Section 805, . . . *at the conclusion of the action*," (italics added) but it would require a new round of litigation and consume scarce judicial resources.

For these reasons, we conclude that pursuant to section 809.9, the prevailing party on a petition for writ of administrative mandate may request attorney fees and costs incurred on mandamus at the conclusion of said proceeding.

3. *Interpretation of "frivolous, unreasonable, without foundation, or in bad faith" under section 809.9.*

 Even though we have been able to reconcile the language of section 809.9 to make it applicable to mandamus proceedings, the remaining issue is a confounding one. Although the statute authorizes an award of attorney fees "if the other party's conduct in bringing, defending, or litigating the suit was *frivolous, unreasonable, without foundation, or in bad faith*" (§ 809.9, italics added), it is difficult to determine what the legislation requires of a party seeking such an award of attorney fees.

Mir argues for an expansive interpretation enabling physicians such as himself to recover under section 809.9 whenever a hospital's disciplinary

[4]The term " 'suit' " has been broadly construed to denote " 'any legal proceeding of a civil kind . . . .' " (*Taranow* v. *Brokstein* (1982) 135 Cal.App.3d 662, 665-666 [185 Cal.Rptr. 532].)

decision is reversed on a petition for writ of mandate as unsupported by substantial evidence.

The Hospital urges a narrower reading, contending a finding of no substantial evidence does not per se mean an action or defense was unreasonable or without foundation.

Because the language of section 809.9 is ambiguous in this regard, we have done our best to interpret it according to the usual rules of statutory construction, including recourse to legislative history. We conclude a grant of a petition for writ of mandate due to a lack of substantial evidence does not amount to a finding that the defense to the petition was unreasonable or without foundation so as to merit an award under section 809.9.

### a. *Principles of statutory interpretation.*

"Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the language of the statute, giving effect to its 'plain meaning.'" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) When "'"statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it."'" (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) The "plain meaning of words in a statute may be disregarded only when that meaning is '"repugnant to the general purview of the act," or for some other compelling reason . . . .'" (*Ibid.*)

Because section 809.9 does not define "unreasonable" or "without foundation," the statute is less than clear as to the precise circumstances under which attorney fees are recoverable, thereby requiring a determination of legislative intent.

### b. *Mir's contention and rejection thereof.*

Mir does not contend the Hospital's opposition on mandamus was frivolous or in bad faith.

The thrust of Mir's claimed entitlement to attorney fees under section 809.9 is that since both the trial and appellate courts determined there was no substantial evidence in the administrative record to support the findings and decision of the judicial review committee and the Board's affirmance thereof, the Hospital's decision to defend against Mir's petition for administrative mandamus relief was "unreasonable" and "without foundation," as those terms are used in section 809.9.

We disagree. As explained below, merely because the trial court on mandamus review and the appellate court found no substantial evidence to support the Hospital's decision—a decision based on the concerns of a multitude of physicians at the levels of the Hospital's medical executive committee, the judicial review committee and the Board—does not in itself establish the Hospital's opposition to Mir's petition for administrative mandamus was "unreasonable" and "without foundation." A finding of insufficient evidence is not tantamount to an *affirmative* finding the Hospital's conduct in resisting mandamus was unreasonable or without foundation.

(1) *The Legislature intended in section 809.9 to enact a sanctions provision, not a broad right to attorney fees in favor of the prevailing party on mandamus, as urged by Mir.*

In our effort to find guidance as to legislative intent respecting our concerns with the statute, we have taken judicial notice of various legislative materials dealing with the adoption of section 809.9. (Evid. Code, §§ 452, subd. (c), 459; see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218, fn. 9 [185 Cal.Rptr. 270, 649 P.2d 912]; *Franklin* v. *Appel* (1992) 8 Cal.App.4th 875, 888, fn. 5 [10 Cal.Rptr.2d 759].) Those materials reflect that in 1989, the Legislature was involved in an overhaul of the medical peer review law by way of Senate Bill No. 1211. Section 809.9 was proposed after a query as to possible remedies for improper peer review proceedings. Thereafter, throughout the legislative history of the bill, there was an obvious focus on authorizing an award of attorney fees for conduct by an opposing party which was deemed to be "frivolous" or in "bad faith."

A revealing document in any analysis of Senate Bill No. 1211 was prepared for the Assembly Subcommittee on the Administration of Justice, dated July 11, 1989. It concludes: "At least four issues remain unresolved" including, inter alia, *"Should the bill contain a bilateral attorney fee clause*, which compels the payment of the other party's attorney fees if the peer review proceeding was either brought or defended *in bad faith or frivolously*?" (Italics added.)

The proposed section 809.9 was added to Senate Bill No. 1211 to meet this concern. It stated a substantially prevailing party would be entitled to attorney fees "if the other party's conduct in bringing, defending, or litigating the suit was *frivolous, unreasonable, without foundation, or in bad faith.*" (§ 809.9; Sen. Bill No. 1211, as amended July 20, 1989, § 9.5, italics added.) This provision was not amended after it was added to Senate Bill No. 1211. Thus, it would appear the attorney fee provision in section 809.9 was in

response to the issue raised in the July 11, 1989, query with respect to bad faith or frivolous conduct.

A subsequent document analyzing Senate Bill No. 1211 (as amended July 20, 1989) for the Senate Third Reading states: "This bill provides . . . [a]ttorney fees may be awarded against either party for the *frivolous or bad faith* prosecution or defense of a peer review proceeding." (Italics added.)

We also have available an August 17, 1989, Senate Rules Committee Analysis of Senate Bill No. 1211. In a section captioned *"Key Provisions of the Bill,"* the document explains: "Attorney fees may be awarded against either party for the *frivolous or bad faith* prosecution or defense of a peer review proceeding." (Italics added.)

This language is also contained in a September 6, 1989, "Enrolled Bill Report" for the State's Consumer Affairs Department, which included a recommendation to the Governor. Under "Bill Summary," the report to the Governor states, inter alia: "Attorneys' fees may be awarded against either party for the *frivolous or bad faith* prosecution or defense of a peer review proceeding." (Italics added.)

Thus, although these four terms, "frivolous, unreasonable, without foundation, or in bad faith" appeared in section 809.9 from its inception, when various reports and analyses were forthcoming, the "frivolous" and "bad faith" language repeatedly was stressed. In view of the concern articulated in the July 11, 1989, analysis, the response thereto in the July 20, 1989, amendment to Senate Bill No. 1211, and the descriptions of section 809.9 in the later materials, including the recommendation to the Governor, it appears the Legislature intended to enact a statute similar to Code of Civil Procedure section 128.5, former section 409.3 (now § 405.38), and sections 437c and 1038, all of which are recognized to embody sanctions provisions. (See *Southern Christian Leadership Conference* v. *Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 228 [281 Cal.Rptr. 216].)[5]

---

[5]Code of Civil Procedure section 128.5 states in pertinent part: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of *bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.*" (Italics added.)

Similarly, the summary judgment statute, Code of Civil Procedure section 437c, states in relevant part: "(i) If the court determines at any time that any of the affidavits are presented *in bad faith or solely for purposes of delay,* the court shall order the party presenting the affidavits to pay the other party . . . [s]anctions[.]" (Italics added.)

Code of Civil Procedure section 405.38, in the chapter pertaining to expungement of lis pendens, states: "The court shall direct that the party prevailing on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion

Because section 809.9 contains the same type of language as these other statutes, it is more appropriately construed as a sanctions measure specifically applicable to suits challenging medical peer review decisions. Nothing in the legislative history supports the position section 809.9 was intended to create a broad entitlement to attorney fees to the prevailing party in a suit challenging a peer review decision.

### (a) *Safeguarding the peer review process.*

This limited reading of section 809.9 is consistent not only with the Legislature's intent but also with the competing need to safeguard the peer review process. The goal of California's peer review system is to promote the highest standards of medical practice through effective peer review. (§ 809, subd. (a)(3).) To require a hospital to pay a physician's attorney fees whenever a physician prevails in a mandamus proceeding inevitably would chill the peer review process. Physicians would seek to avoid the onerous burden of serving on peer review committees and would become wary of providing needed candid evaluations of their colleagues (see *Cedars-Sinai Medical Center* v. *Superior Court* (1993) 12 Cal.App.4th 579, 586-587 [16 Cal.Rptr.2d 253]), lest their hospitals become liable for attorney fees on the slight showing that was made here. A hospital would have to choose between protecting the public and possibly facing an automatic award of attorney fees under section 809.9, and refraining from taking action. Facing the specter of attorney fees, hospitals would have to consider taking the safer course and ignoring all but the most egregious malfeasance. Thus, the mere grant of Mir's mandamus petition, if allowed in itself to form the basis of an award of attorney fees in this case, would work to the detriment of crucial peer review bodies established in hospitals throughout the state.

Consequently, a limited interpretation of section 809.9 is consistent not only with the Legislature's intent but also with the sound public policy of preserving a functioning peer review system.

---

unless the court finds that the other party acted with substantial justification . . . ." (Italics added.)

Also, Code of Civil Procedure section 1038, relating to proceedings under the California Tort Claims Act, requires the trial court to "determine whether or not the plaintiff . . . brought the proceeding *with reasonable cause and in the good faith belief that there was a justifiable controversy* under the facts and law which warranted the filing of the complaint, . . . If the court should determine that the proceeding *was not brought in good faith and with reasonable cause,* . . . [the prevailing party shall be awarded] all reasonable and necessary defense costs[.]" (Italics added.)

(2) *The mere overturning of the Hospital's adverse decision on mandamus for insufficiency of the evidence does not establish the Hospital's conduct in opposing mandamus was unreasonable or without foundation so as to merit sanctions.*

As indicated, the Hospital's medical executive committee charged Mir with failing to use good medical judgment in treating his patient and recommended his hospital privileges be terminated. An evidentiary hearing was held before the three-physician judicial review committee, which heard testimony from an independent expert in gastrointestinal endoscopy criticizing Mir's treatment. *No contrary expert testimony was presented by Mir.* The judicial review committee concluded Mir had demonstrated inappropriate judgment. That decision was affirmed by the Hospital's Board.

Notwithstanding the opposing view held by numerous physicians at various levels of the Hospital proceedings, the trial court granted Mir's petition for writ of administrative mandate and set aside the Hospital's finding as unsupported by substantial evidence. The trial court's determination was affirmed on appeal pursuant to the usual appellate test.

It appears to this court that a leap of logic is required to equate a finding of insufficient evidence with a finding of unreasonable conduct or conduct without foundation *on the same evidence* so as to allow a $45,205 recovery of attorney fees.

This is because a determination that administrative findings are not supported by "substantial evidence in the light of the whole record" (Code Civ. Proc., § 1094.5, subd. (d)) is not synonymous with a determination there was *no supporting evidence.* Further, the issue of whether the Hospital's opposition to Mir's mandamus petition was unreasonable or without foundation was beyond the scope of the limited inquiry on mandamus. It cannot be inferred from a mere finding of no substantial evidence that the Hospital's defense in the mandate action was unreasonable or without foundation. Thus, the finding of insufficient evidence does not support the conclusion the Hospital resisted mandamus unreasonably or without foundation.

█ The "mere fact that medical minds may differ as to what constitutes acceptable levels of proficiency in a given situation does not render *unreasonable* an initial determination that performance was not acceptable." (*Nicholson* v. *Lucas* (1994) 21 Cal.App.4th 1657, 1670 [26 Cal.Rptr.2d 778], italics added.) █ Given the single differing opinion held by the accused physician, as contrasted with the consensus held by the Hospital's physicians, merely because the Hospital's collective determination did not

withstand trial and appellate court scrutiny does not establish the Hospital proceeded unreasonably or without foundation.

If a finding of no substantial evidence were sufficient to trigger recovery under section 809.9, a prevailing physician on mandamus always would be entitled to attorney fees. Not only is such a sweeping interpretation at odds with the Legislature's intent in enacting section 809.9, but, as discussed above, it would seriously hamper the peer review process.

Further, if the mere overturning of a hospital's decision for a lack of substantial evidence gave rise to recovery under section 809.9 on the grounds of "unreasonable" or "without foundation," the statute's provision for recovery of attorney fees where a hospital's action or defense was so lacking in merit as to be "frivolous" or "in bad faith" would be rendered surplusage. Such an interpretation must be rejected because it violates the rule of statutory interpretation that significance must be given to "every word, phrase, sentence and part of an act . . . ." (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)[6, 7]

c. *Proceedings on remand.*

Mir's moving papers under section 809.9, in addition to itemizing the request for attorney fees, essentially argued it was "unreasonable" for the Hospital to have defended against the mandate petition, given the lack of substantial evidence to support its disciplinary decision. As explained above, Mir's showing was inadequate.

Now that we have done our best to clarify the statute, the issue of whether the Hospital's opposition to mandamus was unreasonable or without foundation so as to merit the imposition of sanctions under section 809.9 is to be redetermined pursuant to a noticed motion. ■ As in motion proceedings generally, the burden of proof on the motion for sanctions will be on Mir, the moving party. (See *Corns* v. *Miller* (1986) 181 Cal.App.3d 195, 200 [226 Cal.Rptr. 247].) The scope of the hearing on the sanctions motion is within the trial court's discretion, as with motions generally. (*Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1028 [183 Cal.Rptr. 520, 646 P.2d 191].) ■ However, nothing in section 809.9 precludes a party

---

[6]We observe that *when* a hospital opposes mandamus unreasonably or without foundation, such conduct also would verge on frivolousness or bad faith. Recovery of attorney fees in such a case would be consistent with the Legislature's contemplation in adopting section 809.9.

[7]If our interpretation of section 809.9 is not what the Legislature intended, the statute certainly needs clarification to avoid a tortured court construction. (See *Malibu Committee for Incorporation* v. *Board of Supervisors* (1990) 222 Cal.App.3d 397, 410 [271 Cal.Rptr. 505].)

against whom sanctions are sought from subpoenaing and producing evidence and witnesses or otherwise defending against the request. (See *Lavine, supra*, at p. 1028.)

It is unnecessary to address any remaining arguments of the parties.

### DISPOSITION

The order is reversed and the matter is remanded for a new hearing on the motion for attorney fees, guided by the principles set forth in this opinion. Mir's request for attorney fees on appeal is denied. Each party to bear its own costs on appeal.

Kitching, J., concurred.

**CROSKEY, J.**—I respectfully dissent.

I would affirm the trial court's award of attorney fees to Mir. While I agree with my colleagues' resolution of the "retroactivity" and "substantially prevailing party" questions, I part company with them on their construction and application of the controlling statute. I believe the express statutory language used in Business and Professions Code section 809.9[1] (§ 809.9) justifies the award of fees to Mir.

I cannot agree with the majority's conclusion that section 809.9 is unclear as to the circumstances under which attorney fees are recoverable by a prevailing party simply because section 809.9 does not itself define its use of the terms "unreasonable" and "without foundation." Section 809.9 clearly sets out four *alternative* categories under which such fees may be awarded. At least one of them applies here and justifies, as a matter of law, an award of fees in Mir's favor.

---

[1]Unless otherwise indicated, all statutory references are to the Business and Professions Code.

Section 809.9 is part of Senate Bill No. 1211, legislation added to the Business and Professions Code in 1989. (Stats. 1989, ch. 336, §§ 1-12, p. 1444 et seq.) Senate Bill No. 1211 includes sections 809 through 809.9 of that code. The legislation was enacted pursuant to California's right to "opt-out" of certain of the provisions of the federal Health Care Quality Improvement Act of 1986 (42 U.S.C. § 11101 et seq.). This federal act was enacted "to encourage physicians to engage in effective professional peer review." (§ 809, subd. (a).) The provisions in section 809 et seq. relate to professional health care services provided by "healing arts practitioners," a term which includes physicians and surgeons, podiatrists, clinical psychologists, and dentists. (§ 809, subd. (b).) This "opt-out" legislation was passed "because the laws of this state provide a more careful articulation of the protections for both those undertaking peer review activity and those subject to review, and better integrates [*sic*] public and private systems of peer review." (§ 809, subd. (a)(9)(A).)

The majority opinion does not discuss the specific facts on which the trial court's decision was based, but simply refers, at two separate places, to the fact that there can be differences of medical opinion regarding (1) the quality of a health care provider's services and (2) the actions taken by a health care facility vis-à-vis that provider. This limited and misleading acknowledgement of what actually happened here is followed by the majority's refusal to recognize the established law of the case flowing from a now final decision of another division of this court. As the majority has chosen to eschew a detailed consideration of the factual record, it is necessary that I briefly summarize it (omitting only the brief procedural history already set out in the majority opinion).

The decision to restrict Mir's staff privileges rested on the case of a 23-year-old patient who had swallowed a coin (a quarter) some years before he consulted with Mir for its removal. Charter Suburban Hospital's (Hospital) charge against Mir was that his surgical removal of the coin was unnecessary because another procedure, endoscopy, could have been used to remove the coin. Endoscopy involves visualization and extraction of objects using an endoscope and related hardware. Mir had initially tried endoscopy prior to doing the surgery, but the procedure had not worked. He had examined the patient's stomach first with a flexible endoscope and then a rigid endoscope, but could not locate the coin. During the flexible endoscope, an X-ray was taken which showed that the coin was near the scope, but upon Mir's immediate reexamination with the scope, he still could not visually locate the coin to remove it. Mir's surgical removal of the coin was successful and the patient had no complications from the surgery. When removed, the coin was tarnished and coated in black.

The statement of the charge against Mir reads: "(a) Unnecessary surgery was performed on this 23-year-old patient to remove a coin from his stomach. Dr. Mir proceeding with surgery after failing to remove the coin constituted poor medical judgment. The coin could have been removed from the stomach by endoscopy. A gastroenterologist should have been called to scope the patient. [¶] (b) Dr. Mir demonstrated poor endoscopic technique when he failed to identify the coin endoscopically." The judicial review committee sustained this charge except for the accusation that Mir demonstrated poor endoscopic technique.[2]

The trial court, in its written ruling granting Mir's petition for a writ of mandate, noted that Mir was Board-certified in thoracic surgery and that

---

[2]The committee's finding states: "It appears that flexible endoscopy is the method of choice for removal of coins from the stomach. The patient underwent flexible endoscopy by Dr. Mir and subsequent to that endoscopy, the patient was still considered stable enough to be electively scheduled for a rigid endoscopy followed by, if necessary, the surgical removal of the coin the following day. It therefore appears there was sufficient time available to avail

such certification required a demonstration of competence in endoscopy; the court further noted that the judicial review committee had failed to make a finding that Mir was not competent to perform the endoscopy. The trial court's ruling stated in part: ". . . a determination that [Mir's] decision to operate to remove the coin was poor medical judgment can only stand if there was no [sic] reasonable probability of removal of the coin by endoscopy. On this record there is no substantial evidence that anyone could have done any better with endoscopy than [Mir]. Dr. Degardi [an outside expert with substantial expertise in gastrointestinal endoscopy] gave some self-serving, ego-satisfying testimony that he never missed removing a coin, but on cross-examination failed to support that conclusion . . . . He was unable to satisfactorily explain the obvious inconsistency between his assertion of a consistently high success rate (which he declined to quantify . . .) and the 66.6% failure rate in the pervasive and valid statistic as to an object virtually identical in configuration to a quarter—the button battery. . . . [¶] [Mir's] failure to remove the coin under the peculiar circumstances here is not probative, let alone determinative, of his competency in endoscopy. [¶] There is no dispute in the evidence that if endoscopy failed[,] . . . surgery was indicated. Endoscopy did fail and absent any evidence that [Mir] was incompetent in that procedure the determination of poor medical judgment cannot stand."

The Court of Appeal found that Hospital's expert witness's testimony substantially supported Hospital's finding that flexible endoscopy is the preferred method for removing coins from the stomach. However, that court noted that Mir *did* pursue endoscopy, both flexible and rigid, before proceeding to surgery. The court also noted that (1) Hospital's expert agreed that both in this case and in general, if endoscopy does not succeed, surgery should be used, and (2) such was the sequence used by Mir.

The Court of Appeal's unpublished opinion, *Mir* v. *Charter Suburban Hospital* (Oct. 22, 1991) B049830 (nonpub. opn.), states in part: "The crux of the controversy, as the trial court perceived, therefore revolved around the findings [by the Judicial Review Committee] that [Mir] should not have proceeded with surgery before engaging 'the skills of someone who was trained and skilled in endoscopy for a second attempt,' which would have evoked a 'very high' chance of success. These findings, in turn, necessarily implied a determination that [Mir] was not so trained and skilled. But the

---

oneself of the skills of someone who was trained and skilled in endoscopy for a second attempt. This was not done. The Committee finds that had it been done, the chances of success would have been very high. Therefore, the Committee finds that the judgment demonstrated by Dr. Mir was inappropriate in electively, surgically excising the coin without a second attempt by a trained endoscopist."

trial court discerned no substantial evidentiary support for that implied finding, . . . nor for the related finding that endoscopy additional to [Mir's] would likely have been successful. We agree."

In discussing why the judicial review committee's findings lacked support, the Court of Appeal noted what it termed "unequivocal" evidence that Mir was himself trained and skilled in endoscopy, including gastroscopy, and further noted that (1) Mir "testified that flexible endoscopy had been part of his residency training in thoracic surgery, and he had performed numerous flexible endoscopies in the recent past, over 15 within the year before the hearing," and (2) Hospital had itself granted him privileges in gastroscopy. Additionally, the court observed that (1) there "was no direct evidence that [Mir's] failure to seize [the coin] was professionally deficient," (2) while Hospital's expert had testified that endoscopy would quite likely prove successful in retrieving the coin, the expert had "declined to put a percentage rating on the chances," and (3) Mir had presented to the Judicial Review Committee "an empirical study concerning swallowed button batteries (similar in dimensions and configuration to quarters), which documented a 66 percent rate of failure to retrieve." The court concluded: "On this record, lacking substantial proof of inadequacy of [Mir's] own skill and performance, it was speculative to conclude that success would yet have attended someone else's repeating the endoscopic procedures. It follows that [Mir's] judgment in proceeding with surgery in the order he did was not properly impugned."

The thrust of Mir's section 809.9 motion for attorney fees was that since both the trial court and the Court of Appeal had determined there was no substantial evidence in the administrative record to support the findings and decision which the judicial review committee had made and Hospital's board of directors had affirmed, the conclusion was inescapable that Hospital's decision to defend against Mir's petition for administrative mandamus relief was "unreasonable" and "without foundation," as those terms are used in section 809.9. The trial court agreed. So do I.

On appeal, Hospital argues that such a conclusion is without support because Hospital reasonably and in good faith believed that substantial evidence supported the findings made and affirmed by the judicial review committee and the board of directors, respectively. Contrary to the majority's analysis of section 809.9, I attach no importance to Hospital's subjective belief regarding the sufficiency of the evidence in the record to support its discipline of Mir. Besides, nothing in the language of section 809.9 indicates the Legislature intended a blanket "good faith" defense to a physician's motion for attorney's fees. Such an intention is not specifically set out in

section 809.9. Nor can it reasonably be inferred from the language which the Legislature used. Additionally, the majority's willingness to permit a "good faith" defense to a motion for attorney fees in cases such as the one before us flies in the face of established case law (discussed *infra*) relating to use of the substantial evidence test in administrative mandamus proceedings. In my view, the conclusion is inescapable that Hospital's defense of Mir's Code of Civil Procedure section 1094.5 action was "unreasonable" and "without foundation" as a matter of law.

Section 809.9 addresses conduct which is "frivolous, unreasonable, without foundation, *or* in bad faith," (italics added). "Such use of the word 'or' in a statute indicates an intention to use it disjunctively so as to designate alternative or separate categories. [Citations.]" (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191]; accord, *People* v. *Smith* (1955) 44 Cal.2d 77, 78 [279 P.2d 33].) Despite the Legislature's use of the disjunctive, the majority, in effect, holds that only conduct which is frivolous or in bad faith warrants imposition of what it terms section 809.9 "sanctions." With this I cannot agree.

Analysis of the terms "unreasonable" and "without foundation" best begins by examining the standard of review which the trial court used to determine that Mir should be granted administrative mandamus relief. The court proceeded, as it was required to do, on a "substantial evidence" test under Code of Civil Procedure section 1094.5. Under this standard of review, a court must look at the evidence in support of the successful party (in this case, Hospital), and disregard the contrary evidence. All conflicts are resolved in favor of the successful party and all legitimate and reasonable inferences are indulged in to uphold the findings if possible. The weight of the evidence is disregarded. (*Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143].)

From this description of the substantial evidence test, it is clear that when the trial court in the instant case examined the evidence in the administrative record, it was required to apply a standard of review that was *very deferential to Hospital*. Yet, the trial court nonetheless determined the evidence did not support Hospital's finding that Mir had failed to use good medical judgment in caring for his patient, and the trial court's determination was affirmed on review. *This is the law of the case* and should have been determinative of Mir's fee application.

In concluding that the evidence did not support Hospital's finding, the trial court *necessarily* found that Hospital's finding was unreasonable. In

*Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14 [112 Cal.Rptr. 872], the court stated: "Unless the [challenged administrative] finding, viewed in the light of the entire record, is so lacking in evidentiary support as to render it *unreasonable*, it may not be set aside." (*Id.* at p. 24, italics added.) Since the finding challenged by Mir was properly set aside by the trial court for insufficiency of evidence, it necessarily follows the finding was "so lacking in evidentiary support as to render it unreasonable." *This too is the law of the case.*[3] Because it was an unreasonable finding, it could not support Hospital's decision to place Mir on probation.

The administrative record which the trial court examined in order to determine if there was sufficient evidence to support Hospital's finding that Mir used poor medical judgment is the *same* record which the judicial review committee used in arriving at that finding and the *same* record the board of directors used in upholding that finding. Thus, prior to the time Mir brought his administrative mandamus suit, Hospital had had two opportunities to review the evidence presented to the judicial review committee. After Mir filed his suit, Hospital had to determine whether defense of that suit was warranted; as a result, Hospital had yet another opportunity to review the administrative record to determine if there was substantial evidence to support the finding Mir was challenging. Given that Hospital chose to defend a finding which was clearly indefensible (since it could not pass even a substantial evidence standard of review), I do not find it unreasonable

---

[3] I am particularly disturbed by the majority's insistence on ignoring the law of the case in this matter. Both the trial court and the Court of Appeal determined that the record lacked even substantial evidence to support Hospital's findings and decision. Those determinations stand. Yet, the majority has repeatedly trivialized them. The majority criticizes Mir for not presenting expert testimony at his judicial review committee hearing. The majority makes reference to "the opposing view held by numerous physicians at various levels of the Hospital proceedings" and states that "[n]otwithstanding [this] opposing view . . . , the trial court granted Mir's petition for writ of administrative mandate and set aside the Hospital's finding as unsupported by substantial evidence." (Maj. opn., *ante*, p. 1486.) The majority makes reference to the "single differing opinion held by [Mir], as contrasted with the consensus of opinion held by the Hospital's physicians." (Maj. opn., *ante*, p. 1486.) This represents a disturbingly cavalier approach to the deference which this court should have given to the settled and binding determinations which had been made in this matter.

Additionally, the majority quotes the following language from *Nicholson* v. *Lucas* (1994) 21 Cal.App.4th 1657, 1670 [26 Cal.Rptr.2d 778]: "The mere fact that medical minds may differ as to what constitutes acceptable levels of proficiency in a given situation does not render unreasonable an initial determination that performance was not acceptable." However, *Nicholson* is not an administrative mandamus case. It is a malicious prosecution case and the "initial determination" to which the quoted language has reference is the very first determination by the defendant health care facility to restrict the plaintiff-health care provider's privileges, i.e., the decision made by the health care facility *prior* to its judicial review committee's hearing. (In *Nicholson*, the judicial review committee then determined that the hospital's medical executive committee had *not* met its burden of proof in seeking to terminate all of the doctor's surgical privileges.) *Nicholson* in no way supports the majority's analysis of section 809.9.

that Hospital be required to pay the attorney fees incurred by Mir in securing judicial relief.

This should be the result in those cases where a hospital facility's findings are unreasonable as a matter of law, i.e., to those cases where the findings are "so lacking in evidentiary support as to render [them] unreasonable." (*Northern Inyo Hosp.* v. *Fair Emp. Practice Com., supra,* 38 Cal.App.3d at p. 24.) I do not see how there can be any doubt that when the Legislature used the term "unreasonable" in section 809.9 that it used it in the same sense and for the same purpose as did the *Northern Inyo* court.[4]

I cannot agree with the majority's insistence that the legislative history of section 809.9 shows the Legislature only intended attorney fees to be awarded in cases where a litigant's prosecution or defense of a case was frivolous or in bad faith, i.e., that the Legislature intended section 809.9 to act solely as a sanctions statute. In my view, the Senate's internal documents relative to SB 1211's legislative history do not support the majority's determination that a litigant must show the other party acted frivolously or in bad faith in order to prevail on an a motion for attorney fees. The portions of that history upon which the majority so heavily relies appear to be nothing more than someone's shorthand analysis of section 809.9, not an analytical report of the entirety of the language *actually used* by the Legislature.

The majority's position that the Legislature was focusing only on litigants who take bad faith or frivolous actions flies in the face of the rule of statutory construction which says that when the Legislature speaks of several categories, separates them by commas, and uses the word "or" prior to the last category, the intent of the Legislature was to use "or" as a disjunctive conjunction and to make those categories alternative or separate. (*White* v. *county of Sacramento, supra,* 31 Cal.3d at p. 680.) The majority has completely ignored that rule and has, in effect, written out of section 809.9 the "unreasonable" and "without foundation" categories.

Yet, courts are required to presume that all the words in a statute were intended by the Legislature "to have a meaning and perform a useful

---

[4]The majority has studiously ignored *Northern Inyo,* even though that case supports the trial court's decision to award Mir attorney fees. By doing so, the majority has ignored a basic rule of statutory construction, to wit, that when the Legislature enacts a law, the Legislature is presumed to be aware of published judicial decisions relating to the subject of the statute. (*Anderson* v. *I. M. Jameson Corp.* (1936) 7 Cal.2d 60, 67 [59 P.2d 962]; *People* v. *Koester* (1975) 53 Cal.App.3d 631, 642 [126 Cal.Rptr. 73].) "[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]" (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].)

function [citations]." (*Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421].) "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858; *Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1071 [275 Cal.Rptr. 594].) Additionally, courts are required to "first look to the plain dictionary meaning of the words of the statute" when seeking to carry out the Legislature's intent in enacting the law. (*Rice* v. *Superior Court* (1982) 136 Cal.App.3d 81, 86 [185 Cal.Rptr. 853].) Thus, assuming arguendo that section 809.9 is in need of this court's construction because it is uncertain, basic rules of statutory construction should be followed in accomplishing that construction.

I also disagree with the majority's position that the provisions for attorney fees in section 809.9 are analogous to those in Code of Civil Procedure sections 128.5 (§ 128.5), 437c, subdivision (i) (§ 437c), and section 1038 (§ 1038), the relevant portions of which are set out in footnote 5 of the majority's opinion.[5] § 128.5 is intended to *punish* a litigant's and/or an attorney's improper behavior; it is a provision for sanctions. (*West Coast Development* v. *Reed* (1992) 2 Cal.App.4th 693, 702 [3 Cal.Rptr.2d 790].) It requires a finding of bad faith, *a subjective standard.* (*Javor* v. *Dellinger* (1992) 2 Cal.App.4th 1258, 1261 [3 Cal.Rptr.2d 662].) By their terms, sections 437c and 1038 also impose a subjective test for improper conduct.

Further, under sections 128.5 and 437c, any litigant may be sanctioned, whether his or her side ultimately prevails in the action or not. In contrast, under section 809.9, only a prevailing party is entitled to claim attorney fees. The difference implies an intent on the part of the Legislature to make the prevailing party whole, not to punish the party that did not substantially prevail. Section 809.9 thus resembles a "cost of suit" provision, one that does not *need* to rest on another party's bad faith or frivolous conduct,

---

[5] Citing *Southern Christian Leadership Conference* v. *Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 228 [281 Cal.Rptr. 216], the majority also includes Code of Civil Procedure section 405.38 (§ 405.38) in its list of statutes which, according to the majority opinion, "are recognized to be sanctions provisions." However, section 405.38, which is part of the provisions in the Code of Civil Procedure governing lis pendens, is not so characterized in *Southern Christian Leadership Conference*. Section 405.38 provides a modified objective test for awarding attorney's fees: attorney fees are awarded to the party prevailing on a motion regarding lis pendens "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust."

although such conduct can also be addressed by the court under section 809.9. Additionally, if the Legislature truly intended to limit the attorney fees awarded under section 809.9 to situations addressed in § 128.5, it could have simply made reference to section 128.5, or adopted similar language.

In reviewing a statute, the court presumes that the Legislature had in mind existing statutes when it enacted the one under review. (*Anderson* v. *I. M. Jameson Corp.*, *supra*, 7 Cal.2d at p. 67.) Thus, presumptively the Legislature was aware of section 128.5 when it enacted section 809.9. In enacting the latter statute, the Legislature broadened the grounds for awarding attorney's fees by including conduct that is without foundation or unreasonable. These new categories rest on *objective* standards as opposed to the clearly *subjective* requirement of section 128.5. They focus on situations such as the one before us now, where a reasoned review of the administrative record by Hospital or its legal counsel would have shown that the finding against Mir which the judicial review committee made lacked substantial evidentiary support in the administrative record. That fees might *also* be awarded when bad faith or frivolous conduct alone is present does not change that conclusion. Thus, by its very terms, section 809.9 is broader than section 128.5. It includes *both* objective and subjective standards as *alternative* justifications for fee awards.

The majority assert that affirmance of the trial court's decision to award Mir attorney fees would have a chilling effect on medical staff review committees because it would require a respondent or defendant hospital to be prescient about the outcome of a lawsuit and would penalize the hospital for erring in its predictions. Not so. In my view, section 809.9 *does* require an impartial review of the administrative record in order to determine if substantial evidence is there to support the findings of the peer review committee and thus justify a defense of the health care provider's law suit.

I support the proposition that review and disciplinary proceedings involving medical licensees "are not for the purpose of punishment but primarily to protect the public served by the licensee." (*Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144, 157 [196 Cal.Rptr. 367].) However, I disagree with the majority's position that affirming Mir's award of attorney fees conflicts with such purpose. Awarding fees to physicians who prevail in a mandamus proceeding under a substantial evidence test does not put the public at risk. Such a result should in no way restrict the vigorous investigation and presentation of evidence which should accompany a peer review committee hearing. Nor does it impede the subsequent review of the evidence presented at the committee hearing, review by both the judicial review committee and by a hospital's board of directors, or similar body, if the

health care provider seeks the latter review. Hospitals are always free to consult with their own legal counsel when deciding whether to discipline staff members and whether to defend an administrative mandamus suit or other court action.

A hospital's decision to pursue intense review of a licensed health care provider is, at the very least, to be commended, for such bodies are the public's frontline defense against negligent or incompetent health care providers. However, once the review is conducted and the evidence is in, a health care facility should not pursue litigation when there is no substantial evidence to support its findings. Given that the substantial evidence test is such a minimum burden to bear and is one which invariably works in their favor, hospitals *should* be chilled from defending records that lack such evidence.[6] Indeed, I believe that by enacting attorney fees provisions which can benefit a health care provider, the Legislature has indicated its intention to chill such behavior.

The ramifications to the health care provider of an adverse ruling by a peer review committee or a health care facility's appeals board extend far beyond the provider's standing and privileges at such facility. The adverse ruling may have to be reported to the state licensing agency having regulatory jurisdiction over the provider. (§ 805.) That report will then be furnished to other health care facilities at which the health care provider seeks new or renewed privileges and membership. (§ 805.5.) The health care provider's professional liability insurance rates may be increased. His or her referrals from other health care providers may be negatively impacted. Additionally, the federal Health Care Quality Improvement Act of 1986 has a national data bank on licensed health care providers and therefore the health care provider's reputation follows her or him to other states. (42 U.S.C. § 11131 et seq.)

Thus, when actions are taken against a health care provider based on findings which are not even supported by substantial evidence, the results can be grossly unfortunate for that provider. Requiring the health care

---

[6]The California Medical Association (CMA) has filed an amicus curiae brief in support of Mir. CMA notes that with respect to peer review committees and their functions, its members wear two hats. They serve on medical staff committees and judicial review committees which hear and recommend hospital action in medical staff matters. Additionally, some of them are doctors who are the review subjects of such committees. CMA asserts in its amicus brief that "it is rare that a court finds that a medical staff peer review decision is unsupported by substantial evidence." That would be in keeping with the normal outcome of appeals in which a finding by an administrative review board or a trial court is challenged on a sufficiency of the evidence basis. Thus, it would seem that medical institutions, not the health care providers who staff them, are the major beneficiaries of section 809.9's provision for attorney fees.

facility to pay the costs incurred by the provider in an action to set aside the wrongful discipline imposed by the health care facility does not seem unwarranted. I have no trouble concluding that such a burden was imposed by section 809.9.

A petition for a rehearing was denied September 26, 1994, and respondent's petition for review by the Supreme Court was denied November 23, 1994.