[Civ. No. 47764. First Dist., Div. One. Sept. 13, 1982.]

MYRON J. TARANOW, Plaintiff and Appellant, v.
ARNOLD H. BROKSTEIN, Defendant and Respondent.

COUNSEL

Robert C. Schubert, Bancroft, Avery & McAlister and Barry L. Morris for Plaintiff and Appellant.

Charles A. Cobb, Jeffrey A. Sykes and Lempres & Wulfsberg for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—The above-named parties, in 1975, entered into a written partnership agreement under which they proposed to practice dentistry. As relevant here, the agreement provided:

"Should any partner be forced to bring suit to enforce the terms of this partnership agreement, the prevailing partner shall be awarded his costs of suit incurred therein and his reasonable attorney's fees. . . .

"In the event of a controversy or claim arising out of this agreement which cannot be settled by the partners or their legal representatives, it shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction."

Thereafter a disagreement arose upon which Dr. Brokstein (the instant defendant and respondent) demanded arbitration of a controversy with, and claim against, Dr. Taranow (the instant plaintiff and appellant) including a claim for reimbursement "for his attorney's fees," arising out of the partnership agreement.

An arbitrator was selected and the arbitration was consummated. The award provided that: "Myron Taranow D.D.S., must pay to claimant, Arnold Brokstein, the sum of Fourteen Thousand Six Hundred Dollars ($14,600) [and that] this award is in full settlement of all claims submitted to this arbitration."

The parties appear to agree that the award included attorneys' fees of an undetermined amount.

Dr. Taranow thereafter filed in the superior court his petition under "C.C.P. §§ 1285, 1287" to vacate the award. The issue presented was whether the arbitrator had exceeded his *jurisdiction* in awarding attorney's fees for services in the arbitration proceedings, under the partnership agreement's provision for "reasonable attorney's fees" to the prevailing partner.

Concluding that the arbitrator *did* have the necessary *jurisdiction* to award attorneys' fees, the superior court entered judgment which, in effect, confirmed the arbitration award and ordered Dr. Taranow to make payment accordingly.

Dr. Taranow has appealed from the judgment. ▮▮▮ As stated by him: "This appeal does not involve the merits of that dispute, but only the power of the arbitrator to award attorneys' fees incurred by [Dr. Brokstein] in the course of the arbitration."

An issue before us is whether the commencement of arbitration proceedings may reasonably be deemed the bringing of a *"suit"* within the meaning of the parties' agreement.

While the term "suit" will ordinarily refer to an action commenced in a court of law, it has often been given a much broader meaning. It is not "essential that the proceedings should be originally instituted in a court." (*Cass County* v. *Sarpy County* (1909) 83 Neb. 435 [119 N.W. 685, 686].) The word signifies "the prosecution of any claim, demand, or request, and is much broader than the term 'action,' and may em-

brace it, but does not define it." (*Cornish* v. *Milwaukee & L. W. R. Co.* (1884) 59 Wis. 352 [19 N.W. 443, 444].) It is "in the nature of an action in court." (*In re Milwaukee Light, Heat & Traction Co.* (1910) 142 Wis. 424 [125 N.W. 903, 905].) "'Actions' technically applies only to actions at law, since 'action' is narrower than 'suit,' which denotes any legal proceeding of a civil kind brought by one person against another, and includes actions at law and suits in equity." (*McKinney* v. *Mires* (1933) 95 Mont. 191 [26 P.2d 169].) It may be "given a broad meaning" (*Accounting Data Inc.* v. *McMurtrie* (1977) 78 Wis.2d 89 [253 N.W.2d 534, 535]); it "is a more general term denoting any legal proceeding of a civil kind" (*In re Oliver's Guardianship* (1908) 77 Ohio State 474 [83 N.E. 795, 796]); and it simply connotes an "adversary proceeding" (*City of Tulsa* v. *Board of Trustees of Police Pension* (Okla. 1963) [387 P.2d 255, 258]), or "a process in law instituted by one party to compel another to do him justice" (*Shepherd* v. *Standard Motor Co.* (1936) 263 Ky. 329 [92 S.W.2d 337]).

"Lawsuit" is defined by Webster's Third New International Dictionary (p. 1280) as "any of various technical legal proceedings."

And the term has expressly been held to embrace *arbitration proceedings.* "'[S]uit' is a broad term including arbitration." (*Medawick Contracting Co.* v. *Travelers Ins. Co.*, 202 Misc. 411 [114 N.Y.S.2d 300, 303; and see *Packard* v. *Hill* (N.Y. Supreme Ct. 1827) 7 Cow. 434, *passim.*)

Moreover and as has been pointed out, among other things, two controversies had arisen out of the partnership agreement of our case, which could not be settled by the partners. Both were submitted for arbitration. The first, with which we are not here concerned, was whether Dr. Taranow was indebted to Dr. Brokstein. The second involved an interpretation of their agreement as to whether it permitted attorney's fees to the prevailing party upon arbitration of a controversy, and if it did, the determination and award of a reasonable amount therefor. As we have seen, Dr. Brokstein prevailed on both issues.

We, as was the superior court, have *not* been furnished with a record of the evidentiary and other oral proceedings leading to the arbitration award.

As is the case with judicial determinations, where no record is presented or available on appeal: "Every reasonable intendment will be

indulged in by the courts to give effect to arbitration proceedings....
Thus, the burden is on the party attacking the award to affirmatively
establish the existence of error" *by a proper record. (Ulene v. Murray
Millman of California* (1959) 175 Cal.App.2d 655, 660 [346 P.2d
494]; and see *Griffith Co. v. San Diego Col. for Women,* (1955) 45
Cal.2d 501, 516 [289 P.2d 476, 47 A.L.R.2d 1349]; *United Farmers
Assn. of Cal. v. Klein* (1940) 41 Cal.App.2d 766, 770 [107 P.2d 631].)
*We are therefore required to presume the existence of "'any condition
of facts consistent with [the] validity'" of the arbitrator's decision and
award.* (Our italics; *Johnson v. Hayes Cal Builders, Inc.* (1963) 60
Cal.2d 572, 578 [35 Cal.Rptr. 618, 387 P.2d 394].)

██ We may, and do, therefore presume that extrinsic evidence was
adduced before the arbitrator as to the meaning placed by the parties
upon the attorney's fee provision of their contract. In such an event a
reviewing court may not impair the arbitrator's determination of the is-
sue. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865
[44 Cal.Rptr. 767, 402 P.2d 839].) And we may, and do, also presume
in the absence of a record that Dr. Taranow *voluntarily* joined in the
arbitration of the dispute. Even were we to assume (which we do not)
that the attorney's fees dispute was not covered by the partnership
agreement, he may therefore not now complain. (See *Lovret v. Seyfarth*
(1972) 22 Cal.App.3d 841, 859 [101 Cal.Rptr. 143]; *Kustom Kraft
Homes v. Leivenstein* (1971) 14 Cal.App.3d 805, 809 [92 Cal.Rptr.
650].)

Finally we observe that Dr. Taranow's argument would for all practi-
cal purposes render *meaningless* the contractual provision here under
consideration. For the agreement provides that any "controversy or
claim" arising out of it "shall be settled by arbitration." According to
the connotation insisted upon by him, attorney's fees could never be
awarded, because a *"suit"* to enforce the partnership agreement could
never be brought.

Civil Code section 1641 provides that: "The whole of a contract is to
be taken together, *so as to give effect to every part,* if reasonably prac-
ticable, each clause helping to interpret the other." (Our italics.)

As a sort of statutory emphasis, Civil Code section 1643 states: "A
contract must receive such an interpretation as will make it ... *opera-
tive ... and capable of being carried into effect,* if it can be done
without violating the intent of the parties." (Our italics.)

■ In the state's courts' adherence to this statutory rationale: "It is well-settled law that in construing a contract the meaning of the words is to be determined from a reading of the entire contract.... If a contract is capable of two constructions courts are bound to give such an interpretation as will make it ... *operative* ... *and capable of being carried into effect*, if that may be done without violating the intention of the parties." (Our italics; *Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 160 [338 P.2d 907]; *Dix Box Co.* v. *Stone* (1966) 244 Cal.App.2d 69, 76-77 [52 Cal.Rptr. 847]; see also *Bleecher* v. *Conte*, (1981) 29 Cal.3d 345, 350 [173 Cal.Rptr. 278, 626 P.2d 1051]; *Roth* v. *Department of Veteran Affairs* (1980) 110 Cal.App.3d 622, 628 [167 Cal. Rptr. 552]; *Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749, 761 [75 Cal.Rptr. 533], and see authority there collected.)

■ Further, in our consideration of the above-iterated principles, we think it manifest that the *parties' intent*, in their adoption of the two conflicting provisions (pp. 664, 665, *ante*) was to *avoid court litigation*, and yet allow an award of fees for an attorney's services to the prevailing party when such services become necessary to resolve a dispute in the manner provided by the partnership agreement. Such a conclusion seems eminently more reasonable than that the parties' purpose was that the attorney's fee provision be of little or no meaning.

For these several reasons, we find no merit in the appeal before us.

The trial court will modify the judgment by fixing, and awarding to defendant Brokstein, reasonable attorney's fees for services rendered on this appeal. As so modified, the judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

On October 6, 1982, the judgment was modified to read as printed above.