[No. 27837-1-I.   Division One.   August 17, 1992.]

CHEMICAL PROCESSORS, INC., *Appellant,* v. THE PORT OF SEATTLE, *Respondent.*

Robert J. Adolph, Christopher C. Mason, and Adolph & Smyth, P.S., for appellant.

Thomas E. Kelly, Jr., and Preston Thorgrimson Shidler Gates & Ellis, for respondent.

WEBSTER, A.C.J. — Chemical Processors, Inc. (Chempro) appeals the trial court's denial of an award of attorney's fees after arbitration over the rental terms of an existing lease with the Port of Seattle (the Port). We affirm.

FACTS

In 1971, the Port acquired a hazardous waste treatment facility located at Terminal 91 in Seattle. Chempro first leased the premises in the early 1970's and began subleasing a portion to Pacific Northern Oil in 1975. Two provisions of the current lease are at issue on this appeal: paragraphs 3(f) and 28. Paragraph 3(f) states in part:

> The rent . . . shall be subject to renegotiation effective at the end of the 36 month[s] following the commencement of this lease and every 36 months thereafter . . .. Promptly following . . . a notice of renegotiation *the parties shall negotiate in good faith* . . .. In the event that the parties cannot agree on the rent prior to sixty (60) days before the effective date for rent renegotiation, the rent shall be determined . . . by three arbitrators . . . experienced in the evaluation of the type of premises subject to this lease.

(Italics ours.) Paragraph 28 states in part:

> In the *event that either party shall be required to bring any action to enforce any of the provisions of this lease* . . . and in the further event that one party shall *entirely prevail* in such action, the losing party shall . . . *pay all* of the prevailing

party's actual *costs . . . including* such sums as the court or courts may adjudge reasonable as *attorneys' fees* in the trial court and in any appellate courts.

(Italics ours.)

In April of 1987, the Port gave notice of its intent to renegotiate the rent beginning January 1, 1988. In December of 1987, since the parties were approximately $1,500 apart in agreeing on the monthly rental rate, they agreed to obtain a joint advisory appraisal from Hugh A. Thompson and Associates. While the Thompson appraisal was being prepared, the Port reassigned negotiating responsibilities to its newly hired property manager, Philip Nicolai, who, according to Chempro, had no appraisal experience. Before the Thompson appraisal was completed, Nicolai became aware of the sublease with Pacific Northern Oil. According to Chempro, Nicolai, with no further investigation, concluded that the Port should receive more rent from Chempro than Chempro received from Pacific Northern Oil (despite the fact that the sublease had been specifically approved by the Port Commission 6 years earlier).

On March 10, 1988, the Thompson report was completed, suggesting a monthly rental payment of $16,500 a month. The Port, however, concluded that it was entitled to a monthly rental of $29,000, doubling the existing rent. According to the Port, its assessment of the fair market value was based on extensive investigation and analysis and reflected Nicolai's belief that the Thompson report was defective since it neither utilized an income approach (even though it had access to income information) nor obtained or analyzed information for a market approach.

In September of 1988, when Chempro refused to accept the Port's revised demand of $29,000 per month, the Port invoked paragraph 3(f)'s arbitration clause. Chempro, in its arbitration brief, argued that the rental value was $15,000 per month, that the Port did not act in good faith, and that it was entitled to attorney's fees and costs. The Port, based on the appraisal of David Bezer (member of the Appraisal

Institute), argued that the rent should be $33,000 a month. The arbitration panel determined that the fair rental value of the premises was $15,033.33 per month, but did not address the issue of entitlement to costs and attorney's fees[1] nor find that the Port had failed to act in good faith.

On January 11, 1991, the trial court, while confirming the arbitrator's award, denied Chempro's motion for costs and attorney's fees pursuant to paragraph 28 stating:

> I am going to enter the Order confirming the arbitrators' award, and I'll deny the attorney's fees portion of the request, and leave it as addressed by the arbitrators. I am of the opinion that the renegotiation required under the terms of the lease was in compliance with the terms of the lease in the creation of the leasehold relationship, and that it did not concern an action in violation of the terms of the lease or breach of the terms of the lease, which I am satisfied that Paragraph 28 relates to.

Chempro assigns error to this decision and asks for $112,912.45 in attorney's fees and costs. Both Chempro and the Port ask for attorney's fees on appeal pursuant to RAP 18.1.

### DISCUSSION

We first decide whether the trial court erred in finding that arbitration concerning renegotiation of the rental terms of the lease was not an "action to enforce [a provision]" of the lease under paragraph 28 and, therefore, Chempro was not entitled to attorney's fees. Chempro, claiming the trial court erred, first cites *B&H Constr. & Supply Co. v. District Bd. of Trustees of Tallahassee Comm'ty College*, 542 So. 2d 382 (Fla. Dist. Ct. App.), *review denied*, 549 So. 2d 1013 (Fla. 1989), where the court stated:

> the trial court awarded fees based on the fact that [the respondent] had to take legal action to resolve B & H's breach of the contract and because both parties requested arbitration. Reading the attorney's fee provision and the arbitration provision,

---

[1]The record contains declarations from two of the three arbitrators, both of whom stated that neither party presented the issue of attorney's fees and costs to them for decision and, accordingly, they had not addressed the issue.

*in paria materia,* we agree with [the respondent] that the term "legal action" as used in the attorney's fee clause encompasses arbitration.

*B&H Constr. & Supply Co.,* at 390. Chempro also cites *Taranow v. Brokstein,* 135 Cal. App. 3d 662, 664, 185 Cal. Rptr. 532, 533 (1982) (where contract provided for attorney's fees in a "suit" to "enforce the terms of [a] partnership agreement", the court held that the term "suit" encompassed the mandatory arbitration provision of the contract), *Severtson v. Williams Constr. Co.,* 173 Cal. App. 3d 86, 220 Cal. Rptr. 400 (1985) (in a claim concerning a construction contract breach where the parties agreed to submit to arbitration, the court held that the use of the term "suit" in an attorney's fee provision was broad enough to embrace the arbitration thereby justifying an award of attorney's fees and costs) and *Tate v. Sarotoga Sav. & Loan Ass'n,* 216 Cal. App. 3d 843, 856-57, 265 Cal. Rptr. 440, 448 (1989) (where joint venture containing an arbitration provision provided attorney's fees for "any action at law or in equity", court held that the agreement contemplated attorney's fees for prevailing party in an arbitration).[2] The Port, in rebuttal, cites *Thorgaard Plumbing & Heating Co. v. County of King,* 71 Wn.2d 126, 426 P.2d 828 (1967), where the court stated:

> An *action* is a prosecution *in a court* for the enforcement or protection of private rights and the redress of private wrongs. . . .
> . . . .
> An arbitration proceeding . . . is a substitute forum designed to reach *settlement* of controversies . . . *before* they reach the stage of an *action* in court. RCW 7.04.010 makes this purpose evident . . .
> . . . [T]here is a difference between an action and an arbitration proceeding.

(Citations omitted.) *Thorgaard,* at 130-31.[3]

---

[2]Chempro further cites *Dougherty v. Nationwide Ins. Co.,* 58 Wn. App. 843, 849, 795 P.2d 166 (1990), *review denied,* 116 Wn.2d 1009 (1991), where the court ruled that an arbitration decision is "regarded as the judgment of a court of last resort" and is the "equivalent of a final judgment entered by a court." *See also Channel v. Mills,* 61 Wn. App. 295, 810 P.2d 67 (1991) (an arbitration award becomes final once it is reduced to a judgment).

[3]However, as Chempro points out, *Thorgaard* did not address the issue of attorney's fees and explicitly limited its construction of the word "action" to the

■ We find that the trial court was correct in finding the attorney's fees provision of paragraph 28 was not applicable and, therefore, Chempro's claim must fail. The cases cited by Chempro are distinguishable since none of those cases involved arbitration over renegotiation of an existing lease term such as here (as opposed to arbitration over enforcement or breach of a lease). Instead, each of the cases purportedly equating arbitration to an "action" involved arbitration used as a substitute for legal action or as the means of enforcing the terms of the parties' contract. *See, e.g., B&H Constr. & Supply Co.* (arbitration over breach of contract held to encompass the term "legal action" as used in attorney's fee provision of the contract). Furthermore, *Taranow* and *Severtson* held that the use of the word "suit" was broader than the word "action" (such as was used here), thereby justifying application of the attorney's fee clause to arbitration over enforcement of the contract. *Tate* made a similar distinction due to the broadness of the statement used in the attorney's fee provision ("any action at law or in equity"). Chempro also claims that arbitration under paragraph 3(f) constituted "enforcement". This statement, however, is incorrect. Enforcement would have been to compel the arbitration itself (after the parties failed to agree), not the invocation of the arbitration clause which was specifically mandated by the lease. In conclusion, the judgment confirming the arbitrator's determination of the rental terms of the lease and denial of attorney's fees did not constitute an "action to enforce [a provision] of th[e] lease" under paragraph 28.[4]

We next address Chempro's claim that the lease, read as a whole, evidences both Chempro's and the Port's intention

---

county nonclaim statute (RCW 36.45.030). *Thorgaard*, at 130. Furthermore, the arbitration clause in the contract at issue in *Thorgaard* stated that the "*decision of the arbitrators* shall be a *condition precedent* to any *right of legal action.*" *Thorgaard*, at 131 n.5.

[4]Neither would Chempro's motion for a declaratory judgment, filed on April 25, 1989, constitute an "action" for the purposes of paragraph 28 since that motion sought to declare the arbitration clause null and unenforceable as opposed to an "action to enforce [a provision]" of the lease.

that the attorney's fee provision of paragraph 28 apply to arbitrations over rental value under paragraph 3(f). However, Chempro has pointed to no facts or circumstances which show that the parties expressly intended paragraph 28 to apply to the rental arbitration. As the Port points out, the rental arbitration provision is the means for determining a term of the lease, not an "action" to enforce that term. There is nothing in the lease, and no extrinsic evidence has been offered, which shows the parties specifically intended paragraph 28 to apply to arbitrations under paragraph 3(f).[5]

█ Finally, we address Chempro's claim that paragraph 3(f)'s "good faith negotiation" provision was violated since the Port forced the rental issue into arbitration, thereby establishing a separate ground to justify an award of attorney's fees and costs. This claim is based on the fact that the Port, after receiving the Thompson appraisal, claimed that it was entitled to a monthly rental of $29,000 per month (virtually doubling the existing rent). However, in the absence of findings from the arbitrators on the issue, we are unable to rule on it on appeal.

The judgment is affirmed.[6]

PEKELIS and AGID, JJ., concur.

Review denied at 120 Wn.2d 1023 (1993).

---

[5]Chempro also claims that paragraphs 28 and 3(f) are ambiguous and must be construed against the Port since the Port drafted the lease. *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 827, 410 P.2d 7 (1966). The Port, in rebuttal, claims that even though it drafted the initial version of the lease, evidence shows that Chempro reviewed the draft, proposed several changes, had its attorneys review the draft, and that there is no evidence showing who was the source of the ultimate language. However, we find that even assuming the Port was the drafter of the provisions at issue, the language is not ambiguous.

[6]The Port requests that we grant it attorney's fees for this appeal. However, such an award would necessarily arise out of the contract. Since the contract only provides for attorney's fees in an action to enforce a provision of the lease and, as previously stated, the arbitration over the rental terms did not constitute "an action" for the purposes of the lease, we decline to award the Port its fees on appeal.