Filed 8/20/24  Zokaei v. Mansoir CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SIMA ZOKAEI,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SALEM MANSOIR,<br><br>        Defendant and Appellant.<br><br>_____ | A167365<br><br>(San Francisco City & County<br> Super. Ct. No. CPF22517913) |
| 2718 OCTAVIA STREET<br>HOMEOWNERS' ASSOCIATION,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SALEM MANSOIR,<br><br>        Defendant and Appellant. | A168550<br><br>(San Francisco City & County<br> Super. Ct. No. CPF23518068) |

Defendant Salem Mansoir appeals following judgments confirming an arbitrator's awards of attorney fees and costs to plaintiffs Sima Zokaei and 2718 Octavia Street Homeowners' Association ("the HOA").  In contending the trial court erred in confirming the awards, Mansoir claims that the arbitrator exceeded his authority by awarding attorney fees and that the arbitrator failed to disclose information pertaining to his relationship with

1

one of the HOA's arbitration attorneys.  Mansoir further contends that the HOA judicially admitted it was bound by Zokaei's award, and that the doctrines of res judicata and judicial estoppel precluded the HOA from seeking attorney fees.[1]  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Arbitration

Mansoir and Zokaei are neighbors who live in condominiums that are part of a four-unit condominium property in San Francisco.  All condominium owners, and anyone with a right, title or interest in the real property, are bound by a declaration of conventions, covenants, and restrictions (CC&R's), which set out various "limitations, covenants, conditions, restrictions and easements [that] constitute equitable servitudes and covenants which shall run with the land."  Pursuant to the CC&R's, all condominium owners are members of the HOA, which is tasked with managing and administering the property in accordance with the CC&R's, the HOA's bylaws, and the rules and regulations for the members, "all as amended from time to time."  Under a 1997 amendment to the CC&R's, in the case of "any claim or dispute" between the HOA and any condominium owner relating to the rights and/or duties of the parties under the CC&R's, if the parties are unable to resolve their disputes informally or through mediation, then "the matter shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association."

---

[1]      Mansoir additionally argues these alleged errors require not just vacatur of the award, but a re-do of the entire arbitration proceeding, as the arbitrator misinterpreted the floor covering provision at issue, which will be discussed more below.  Because this argument is only briefly mentioned, unaccompanied by a single record citation or citation to authority, we will not discuss it.  Moreover, Zokaei notes Mansoir did not contest the arbitrator's interpretation of the floor covering provision in the trial court.

Mansoir owns a ground floor condominium, while Zokaei owns the condominium directly above him. Zokaei purchased the unit in 2019 for her daughter to live in while attending law school in the city. Shortly after Zokaei purchased the unit, Mansoir began to complain about noise coming from Zokaei's unit and inquired about Zokaei's floor coverings. Eventually, Mansoir filed demands for arbitration with the American Arbitration Association (AAA) seeking damages, declaratory relief, attorney fees, and arbitration costs against Zokaei and the HOA.

In his arbitration brief, Mansoir alleged, in part, that Zokaei violated section 7.15 of the CC&R's, which stated: "Each room other than the kitchen and bathrooms in all Units located above other Units shall have carpeting or other noise deadening materials approved by the Board in eighty percent of its square footage, in order to reasonably reduce noise." Mansoir also complained the noise constituted a nuisance.

The HOA cross-complained for breach of the CC&R's, violation of the Davis-Stirling Common Interest Development Act, nuisance, negligence, and declaratory relief. Among other things, the HOA alleged that Mansoir allowed his three children to make excessive noise, and that he harassed and stalked Zokaei and her daughter, which actions constituted a nuisance. The HOA claimed Mansoir breached the CC&R's and the Davis-Stirling Common Interest Development Act (Civ. Code, § 4920) when, as president of the HOA, he raised the excessive noise issue at a special HOA meeting even though the issue was not on the meeting agenda. As to this latter claim, the HOA invoked Civil Code section 5975, subdivision (c), which provides that "[i]n an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." In its prayer, the HOA sought damages, declaratory relief, costs, and attorney fees pursuant to section 10.1

3

of the CC&R's, which provides: "The [HOA] or any Owner has the right to enforce the provisions of the Governing Documents [(including the CC&R's)] by any civil action, and shall be entitled to recover reasonable attorney's fees and costs as are ordered by the Court." The HOA also sought attorney fees under Civil Code section 5975.

The arbitrator issued an "interim" award rejecting all of Mansoir's claims. Among other things, the arbitrator found Zokaei and the HOA did not violate section 7.15 of the CC&R's, and he rejected the nuisance claim because the noise from Zokaei's unit was nothing other than "normal noise associated with residential life." The arbitrator, however, also rejected the HOA's various cross-claims against Mansoir. Referencing section 10.1 of the CC&R's, the arbitrator determined for purposes of awarding attorney fees and costs that the HOA and Zokaei were the prevailing parties and invited further briefing regarding the amounts to be awarded.

The HOA filed a brief seeking $264,464 in attorney fees and $31,787.91 in costs. Zokaei sought $161,300 in attorney fees and $31,759.93 in costs. In his opposition, Mansoir argued the arbitrator lacked authority to issue such an award because the arbitration provision in the CC&R's did not permit an award of fees and costs, and because section 10.1 of the CC&R's permitted recovery of attorney fees and costs only as ordered by a court in a "civil action," not in an arbitration.

In November 2022, the arbitrator issued its final award granting the HOA a total of $253,087.53, consisting of $200,420 in attorney fees, $28,812.91 in costs, and $23,854.62 for AAA fees and arbitrator compensation. The arbitrator also awarded Zokaei a total of $166,353.88, consisting of $117,888.80 in attorney fees, $28,110.40 in costs, and $20,354.68 for AAA fees and arbitrator compensation. The arbitrator determined he had

4

authority to award attorney fees and costs under section 10.1 of the CC&R's, and the 1997 arbitration amendment to the CC&R's. The arbitrator reasoned that section 10.1 of the CC&R's was "subsumed" by this arbitration amendment and application of section 10.1 was not limited to enforcement matters litigated in court.

## B. Trial Court Proceedings

In December 2022, in San Francisco County Superior Court case number CPF22517913, Zokaei filed a petition to confirm the arbitration award. Zokaei requested the court enter a judgment in her favor in the amount awarded to her by the arbitrator, plus attorney fees she incurred in filing the petition to confirm, and interest. Mansoir opposed the petition, arguing the arbitrator had no power to award attorney fees because the parties had no agreement for such fees. Mansoir also claimed attorney fees were never at issue at any point in the arbitration. In February 2023, Mansoir filed a petition to vacate the award on the same grounds, as well as on the ground that the arbitrator failed to disclose his connection to one of the HOA's arbitration attorneys on the social media platform, LinkedIn.[2] On the latter point, Mansoir claimed the arbitrator failed to disclose that he "made repeated online public endorsements of [the HOA attorney's] posts regarding HOA law both before and during the commencement of the arbitration process."

The trial court granted Zokaei's petition to confirm the award, stating: "The final arbitration award . . . dated November 16, 2022 awarding Petitioner Sima Zokaei the amount of $166,353.88 against Respondent Salem Mansoir is hereby confirmed." The court also denied Mansoir's petition to

---

[2] The register of actions in case number CPF22517913 indicates that Mansoir also filed a prior motion to vacate the award in January 2023. That initial motion to vacate does not appear to be in the appellate record.

vacate and awarded Zokaei additional fees and costs she incurred in pursuing her petition to confirm and opposing Mansoir's petition. In March 2023, the court entered judgment in Zokaei's favor in the sum of $188,236.74. Mansoir filed a notice of appeal (case no. A167365).

In May 2023, in San Francisco County Superior Court case number CPF23518068, the HOA filed a petition to confirm the arbitration award. The HOA requested the court enter a judgment in its favor in the amount awarded by the arbitrator, plus attorney fees it incurred in filing the petition to confirm, and interest. Mansoir opposed the petition, contending the HOA waived any claim to its portion of the arbitration award because it "failed to seek correction of the amount indicated in . . . Zokaei's petition." Mansoir likewise claimed the HOA was judicially estopped from seeking confirmation of its portion of the award because the HOA failed to indicate that the amount sought in Zokaei's petition was incorrect or that the corresponding judgment did not include the award to the HOA. Mansoir also argued the HOA was barred by the doctrine of res judicata from trying to obtain a judgment insofar as, in San Francisco Superior Court case number CPF22517913, the HOA argued Mansoir's petition to vacate should be denied because the court already issued a judgment in favor of Zokaei.

The trial court granted the HOA's petition to confirm, indicating the HOA was entitled to costs and attorney fees incurred in bringing its petition to confirm. In August 2023, the court entered judgment in the HOA's favor in the sum of $272,337.21. Mansoir filed a notice of appeal (case no. A168550).

We granted Mansoir's unopposed motion to consolidate these appeals.

## DISCUSSION

When parties submit to binding arbitration, they impliedly agree the arbitrator's decision will be binding and final. (*Moncharsh v. Heily & Blase*

6

(1992) 3 Cal.4th 1, 9 (*Moncharsh*).) "[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11.) "[J]udicial review of private, binding arbitration awards is generally limited to the statutory grounds for vacating ([Code Civ. Proc., § 1286.2]) or correcting ([*id.*, § 1286.6]) an award." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775 (*Moshonov*).)

As relevant here, Code of Civil Procedure section 1286.2[3] provides the court "shall vacate" the award if it finds that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (§ 1286.2, subd. (a)(4)), or that "[a]n arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (§ 1286.2, subd. (a)(6).) " 'Unless one of the enumerated grounds exists, a court may not vacate an award even if it contains a legal or factual error on its face which results in substantial injustice.' " (*Harris v. Sando* (2002) 96 Cal.App.4th 1310, 1313 (*Harris*).)

"On appeal, we review de novo a trial court's decision on undisputed facts to confirm, correct or vacate an arbitration award." (*Taska v. The RealReal, Inc.* (2022) 85 Cal.App.5th 1, 9.)

### A. Attorney Fees and Costs

Mansoir first contends the arbitrator exceeded his powers by awarding attorney fees because there was no agreement between the parties to award

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

7

attorney fees in the event of arbitration. In Mansoir's view, section 10.1 of the CC&R's allowed the recovery of attorney fees and costs only in "civil actions" as ordered by a court, as distinguished from private arbitration proceedings. Mansoir argues the "award is based on the Arbitrator's 'arbitrary remaking' of the parties' arbitration agreement and 'rests on a completely irrational construction of the contract.'"

In so arguing, Mansoir cites to *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362 (*Advanced Micro Devices*) for the proposition that "[v]acating an arbitration award is proper where the award 'rests on a completely irrational construction of the contract [Citations.] . . . [or] amounts to an arbitrary remaking of the contract.'" He also relies on *Thompson v. Jespersen* (1990) 222 Cal.App.3d 964 (*Thompson*) for the proposition that where there is no express agreement regarding an award of fees, an arbitrator lacks the power to award attorney fees. Further, he notes section 1284.2, which provides: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."

Relying on principles of arbitral finality and limited appellate review, the HOA contends Mansoir's claim is not reviewable. Similarly, Zokaei cites authority concerning deference given to the interpretation of a contract by arbitrators and the limited scope of judicial review as to that subject, and argues the arbitrator here had the power to determine whether the CC&R's provided for attorney fees to prevailing parties in an arbitration, and this court should not second-guess the arbitrator's interpretation.

8

As noted, generally, "parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh*, *supra*, 3 Cal.4th at p. 9.) And ordinarily, " '[t]he merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11.)

In *Advanced Micro Devices, supra*, 9 Cal.4th 362, our Supreme Court noted prior case law determined whether an arbitrator's award exceeded his or her powers by utilizing the following inquiries: (1) whether the award rests on a " 'completely irrational' " construction of the contract, or (2) whether the award amounts to an " 'arbitrary remaking' " of the contract. (*Id.* at p. 376.) The high court also identified a later case that combined these tests "into a single formula: 'Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties.' " (*Ibid.*) The high court then cast doubt on the continued validity of this approach, noting that arbitration awards generally may not be vacated or corrected for errors of fact or law. (*Id.* at p. 377, fn. 10.) The court, however, did not conclusively decide the issue since the case before it involved the arbitrator's choice of remedies, rather than interpretation of a contract. (*Ibid.*)

That said, other decisions by the high court similarly questioned the applicability of the " 'irrationality' " and " 'arbitrariness' " tests that allowed courts to evaluate an arbitrator's interpretation of a fees provision. For example, in *Moshonov, supra*, 22 Cal.4th 771, the arbitrator had declined to

9

award attorney fees after finding the subject contract did not provide for attorney fees in the tort actions pleaded against the defendants. (*Moshonov*, at pp. 774–775.) In allowing that decision to stand, the high court held that "under the principle of arbitral finality as explained in *Moncharsh*, the arbitrator's award in the present case could not be judicially corrected to award defendants their attorney fees." (*Moshonov*, *supra*, 22 Cal.4th at p. 776.) All the parties had prayed for fees in their various pleadings, and they then submitted the matter to binding arbitration, "without any pertinent limitation on the issues to be arbitrated." (*Ibid*.) Under the parties' agreed rules of arbitration (i.e., the California Rules of Court ordinarily governing judicial arbitration), "the arbitrator was empowered 'to decide the law and facts of the case,'" and "[t]he recovery or nonrecovery of fees being one of the 'contested issues of law and fact submitted to the arbitrator for decision' [citation], the arbitrator's decision was final and could not be judicially reviewed for error." (*Ibid*.) As *Moshonov* explained, "arbitrators do not 'exceed[] their powers' within the meaning of section 1286.2, subdivision [(a)(4)] . . . merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators. 'The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.'" (*Moshonov*, at pp. 775–776.)

Following the reasoning of the high court, we conclude the arbitrator's attorney fee and costs awards in this case are not subject to judicial review. As in *Moshonov*, all parties here prayed for attorney fees and arbitration costs in their various arbitration pleadings and filings. (See *Moshonov*, *supra*, 22 Cal.4th at p. 774.) More specifically, both of Mansoir's demands for arbitration requested an award of attorney fees and arbitration costs. The

10

same goes for Zokaei's statement of defenses in response to Mansoir's claims and the HOA's cross-complaint. And beyond his initial demands, Mansoir's answer to the HOA's cross-complaint included a request for "attorney fees incurred as a result of this action" and also "costs of suit." As Mansoir acknowledges, he did not object to the HOA or Zokaei's demands for attorney fees and costs. Rather, he belatedly chose to disclaim an entitlement to such fees and costs only after the arbitrator issued his interim award concluding the HOA and Zokaei were the prevailing parties.[4]

Not only does *Moshonov* support our conclusion, but so do the applicable AAA rules of arbitration, which provide that an arbitrator's award may include an award of attorneys' fees where, as here, "all parties have requested such an award or it is authorized by law or the parties' arbitration agreement." (AAA, Commercial Arbitration Rules (2022) rule 49(d)(ii), p. 31.)

Mansoir's insistence that the parties did not request attorney fees is belied by the record, and he fails to explain why the parties' various requests for attorney fees do not disprove his position.[5] Moreover, because the

---

[4] Though we need not rely on this ground, we note these facts indicate Mansoir invited the claimed error. (*Harris*, *supra*, 96 Cal.App.4th at p. 1314 [arbitrator did not exceed his powers in awarding attorney fees where complaining parties had both requested attorney fees in the arbitration and thus invited any error].)

[5] Mansoir claims the fact that he sought attorney fees and costs in his arbitration pleadings did not mean he submitted the issue to arbitration. But that contention has been undermined by the California Supreme Court. (*Moshonov*, *supra*, 22 Cal.4th at p. 776 ["the parties here effectively submitted the issue of attorney fees to the arbitrator by submitting to arbitration all matters pending in the scheduled trial, including the prayer for attorney fees in the complaint"].) Mansoir's authorities do not involve arbitration and do not suggest otherwise. (E.g., *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, *Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898; *Hasler v. Howard* (2004) 120 Cal.App.4th 1023.)

11

attorney fees provision was limited in scope to disputes relating to the "Governing Documents," which include the CC&R's, the arbitrator had the power to decide the attorney fees matter given the nature of the arbitrated disputes. At bottom, Mansoir does not appear to contend the arbitrator lacked the power to determine the scope of the attorney fees provision; instead, he strenuously argues the arbitrator's interpretation was wrong and irrational. As indicated, however, this contention is unavailing. Having interpreted the contract as he was empowered to do, the arbitrator's decision was final and cannot be judicially reviewed for error. (*Moshonov*, *supra*, 22 Cal.4th at p. 776.)

Even assuming, for the sake of argument, that the " 'irrationality' " and " 'arbitrariness' " tests remain good law, Mansoir still fails to show the arbitrator's award rests on a " 'completely irrational' " construction of the CC&R's or that the award "amounts to an 'arbitrary remaking' of the contract between the parties." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 376.)

The CC&R's in this case were contractual in nature, binding the HOA and condominium owners to its terms. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236–240.) By way of the recorded 1997 amendment, the CC&R's required binding arbitration to settle *all* claims and disputes between the HOA and condominium owners relating to the parties' rights and duties under the CC&R's. Furthermore, section 10.1 of the CC&R's—which remains unchanged from the original version of the CC&R's recorded in 1987— provides: "The [HOA] or any Owner has the right to enforce the provisions of

the Governing Documents[6] by any civil action, and shall be entitled to recover reasonable attorneys' fees and costs as are ordered by the Court." In this case, the arbitrator determined that the question of attorney fees and costs was properly before it in the arbitration because the CC&R's required that all claims or disputes between the HOA and condominium owners be submitted to binding arbitration. The arbitrator rejected the contention that section 10.1 of the CC&R's was limited to enforcement matters litigated in court, reasoning that section 10.1 was "subsumed by the arbitration amendment."

Regardless of the merits of Mansoir's proposed alternative interpretation of the CC&R's, we cannot conclude the arbitrator's interpretation was irrational.[7] As a preliminary matter, the CC&R's did not define the term "civil action," and no one offered extrinsic evidence establishing that the parties intended the term to exclude arbitration proceedings.

True, the term action " 'technically applies only to actions at law, since "action" is narrower than "suit," which denotes any legal proceeding of a civil kind brought by one person against another, and includes actions at law and suits in equity.' " (*Taranow v. Brokstein* (1982) 135 Cal.App.3d 662, 666

---

6       Under the CC&R's, " 'Governing Documents' "means the CC&R's, any exhibits attached to it, the HOA bylaws, and the rules and regulations for the members, "all as amended from time to time."

7       At oral argument, Mansoir additionally argued the 1997 amendment was properly understood as completely replacing section 10.1 of the CC&R's so as to nullify any right to attorney's fees under that section. This argument was not made in Mansoir's opening brief and is therefore forfeited. In any event, this variation of Mansoir's interpretive views does nothing to alter our conclusion that the arbitrator's interpretation of the CC&R's is neither subject to judicial review nor amounts to an irrational or arbitrary remaking of the contract.

(*Taranow*).)  But it bears emphasizing that "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."  (Civ. Code, § 1644.)  Here, the record contains no evidence indicating the parties ascribed a technical meaning to the term "civil action."  Instead, all parties, including Mansoir, apparently understood the CC&R's as providing for the recovery of attorney fees and costs incurred during arbitration, as reasonably demonstrated by the fact that they all demanded an award of attorney fees and arbitration costs in their arbitration pleadings and filings.

Perhaps more importantly, another rule of contract interpretation is that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" supports interpreting the attorney fees and costs provision in this case as applying to arbitration proceedings.  (Civ. Code, § 1641; *id.*, § 1643 ["A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"].)

Based on this principle, courts have held that where "a contract both compels arbitration and awards attorney's fees to the prevailing party in 'litigation' arising out of the contract, the attorneys' fee provision applies to the arbitration.  [Citations.]  Any other result would render the fee provision meaningless, a result we must avoid where possible.  (Civ. Code, § 1641 . . . .)  By the same reasoning, a contract that both compels arbitration and requires a 'court' to determine the amount of the fee award must contemplate that an arbitrator will make the fee award.  Otherwise, fees could never be awarded

14

because no 'court' may decide a dispute under the contract; all such disputes must be decided by an arbitrator." (*Harris*, *supra*, 96 Cal.App.4th at pp. 1314–1315; see *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 887 [approving similar reasoning in *Taranow*, *supra*, 135 Cal.App.3d 662].)

The facts here fit comfortably within the rule and reasoning set out in *Harris*. As discussed, the CC&R's compel binding arbitration of all disputes between the HOA and condominium owners related to the rights and duties of the parties under the CC&R's; at the same time, the CC&R's permit the recovery of attorney fees and costs in a "civil action" and as ordered by a court when the HOA or an owner exercises their rights under the CC&R's. The attorney fees provision would be largely meaningless if given the interpretation that Mansoir now urges.

Mansoir contends that the arbitrator's ruling, if found correct, would "create a right to attorney's fees in every arbitration irrespective of the language of the arbitration agreement." Not so. This case involves CC&R's with both an attorney fees provision and a broad and binding arbitration provision. The arbitrator's award does not rest on an irrational construction of the CC&R's, nor does the arbitrator's interpretation amount to an arbitrary remaking of the contract. Nothing in our reasoning supports a broad or categorical rule that any arbitrator can award attorney fees or costs irrespective of the language in the governing contract.

Mansoir next argues the arbitrator's award conflicts with an earlier ruling by the arbitrator which Mansoir perceives "effectively affirmed that an arbitration proceeding is not a civil action." This misdescribes the arbitrator's earlier ruling, which simply denied the HOA's request to file a dispositive motion without providing any reasoning.

15

Mansoir also asserts the arbitrator "recognized that the arbitration agreement did not contain any attorney's fees provision" and then disregarded the lack of an explicit attorney fees agreement as " 'irrelevant.' " This is inaccurate.  Though the arbitrator stated the arbitration amendment in the CC&R's did not "explicitly state that attorney's fees may be awarded in arbitration," the arbitrator nevertheless interpreted the language in the arbitration amendment and the attorney fees provision in context with each other and found the arbitration agreement "subsumed" the attorney fees provision.

This case is distinguishable from *Thompson*, *supra*, 222 Cal.App.3d 964, on which Mansoir relies, as there the contract at issue had no attorney fees provision.  (*Thompson*, at p. 967; see *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 389 [summarizing *Thompson* as a case where the appellate court "vacated an arbitral award of attorney fees on the ground the fee issue was neither submitted to arbitration nor within the ' "terms" ' of the parties' contract"].)  In this case, there is both an attorney fees provision and an arbitration provision in the CC&R's.  In this regard, we are not persuaded by Mansoir's suggestion that the arbitration and attorney fees provisions were not part of the same document.  The CC&R's contain a provision indicating that amended versions of the CC&R's become part of the CC&R's:  "This Declaration may be amended by an instrument in writing . . . ."  The CC&R's also defines "Governing Documents" as including the CC&R's and any amendments.  Thus, even though the arbitration amendment is a separately recorded document from the original CC&R's, it is just as much a part of the CC&R's as the originally recorded provisions.

*Thompson*, *supra*, 222 Cal.App.3d 964, is distinguishable on another ground.  In reversing the confirmation of an award including attorney fees,

16

the court in *Thompson* recognized that " 'parties may agree to submit to arbitration an issue which would not otherwise be arbitrable under the terms of the contract [citation],' " but the court highlighted the fact that the party opposing the attorney fee award had "strenuously, and consistently, contended the arbitrators had no jurisdiction to make such an award." (*Thompson*, at p. 968.) By contrast, the record here establishes that Mansoir had sought attorney fees and costs throughout the arbitration until he saw the arbitrator's interim award in favor of the HOA and Zokaei.

Finally, insisting there was no applicable attorney fees provision in this case, Mansoir contends the arbitrator also exceeded his authority by finding the HOA and Zokaei were the prevailing parties because "the only claim in the entirety of the arbitration that could trigger any consideration of fees was . . . [the] HOA's request for attorney's fees under Civil Code section 5975," and he was the prevailing party under Civil Code section 5975. But we have already concluded the arbitrator's determination that the CC&R's attorney fees provision applied to the arbitration proceedings in this case is not subject to judicial review. Furthermore, regardless of whether Mansoir prevailed on the cross-complaint, the HOA and Zokaei prevailed in defending against Mansoir's claims. Mansoir does not address this, nor does he point to any limitation on the arbitrator's power to determine who the prevailing parties were.

In sum, we reject Mansoir's claim that the arbitrator exceeded his powers by awarding attorney fees.[8]

---

[8] Having rejected Mansoir's contentions on the foregoing grounds, we need not and do not address the HOA's argument that Mansoir is barred from challenging the judgment in favor of the HOA because Mansoir failed to properly challenge the award in the trial court. (See *Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390, 393–396.)

## B. Disclosure Obligations

Mansoir next contends the arbitration award must be vacated because, though the arbitrator disclosed that he previously mediated three cases with one of the HOA's attorneys, he failed to disclose that he "repeatedly endorsed" that attorney's posts concerning HOA law on the social media platform, LinkedIn. Asserting that the posts "pertained to the very subject matter at issue during arbitration," Mansoir contends such online interactions cause a person aware of the facts to reasonably entertain a doubt regarding the arbitrator's " 'capacity to be impartial.' " We are not persuaded.

Mansoir's argument is nearly completely bereft of record citations. As such, the claim is forfeited. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Additionally, though Mansoir raised this disclosure issue in his petition to vacate the award, he appeared to direct the argument only to the HOA's portion of the award, and so arguably forfeited the claim as to Zokaei's portion of the award.

Even if not forfeited, the claim falls short of warranting relief. Under section 1286.2, subdivision (a)(6), a court must vacate an award if "[a]n arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." In turn, section 1281.9 provides "the proposed neutral arbitrator shall disclose all matters that could

---

We also decline to consider Mansoir's contention—tardily made for the first time in his reply brief—that the arbitrator exceeded his authority by requiring Mansoir to pay administrative and arbitrator fees. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.)

18

cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including . . . : [¶] . . . [¶] . . . Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter." Under ethics standards, neutral arbitrators have a duty to "disclose *all matters* that could cause a person aware of the facts to *reasonably entertain a doubt* that the arbitrator would be able to be impartial." (Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, std. 7(d), italics added; see *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 393 [the disclosure requirements serve "only to ensure the impartiality of the neutral arbitrator" and "are not intended to mandate disclosure of all matters that a party might wish to consider in deciding whether to oppose or accept the selection of an arbitrator"].)

In *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, the court summarized the principles governing our analysis as follows. "Courts apply an objective test in determining whether under section 1281.9, subdivision (a) neutral arbitrators must disclose matters that could reasonably cause a person aware of the facts to entertain a doubt that the proposed arbitrator would be impartial. [Citation.] The 'objective test . . . focuses on a reasonable person's perception of bias and does not require actual bias.' [Citation.] Accordingly, we are not concerned with the subjective question of whether the arbitrator was actually biased, but whether an objective, reasonable person aware of the facts reasonably could entertain a doubt that he could be impartial in the case. [Citation.] [¶] *The reasonable person under this objective test ' "is not someone who is 'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.' "* [Citations.] "[T]he partisan litigant emotionally

19

involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard." [Citations.] [¶] "An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*." ' [Citation.] In this context, ' "[i]mpartiality" entails the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind." ' [Citation.] *The 'appearance-of-partiality "standard 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.' " ' "* (*Malek Media Group*, at p. 828, first and fourth italics added, second and third italics in original.) When, as here, the facts are not in dispute, we review the issue of whether an arbitrator was required to disclose particular information de novo. (*Id.* at p. 829.)

In this case, Mansoir's petition to vacate acknowledged the arbitrator's disclosure of three prior mediations with the HOA's attorney, though it appears unclear whether the arbitrator and the attorney represented the mediating parties, or whether the arbitrator served as the mediator in cases involving the attorney. But the petition proffered screenshots of the LinkedIn posts that the arbitrator "liked," which are the focal point of this claim. Those posts consist of: a post promoting a webinar put on by the attorney about what clients should know before buying or selling a condominium; a post promoting the attorney's webinar about post-wildfire construction defect issues; a post promoting the attorney's radio appearance concerning post-wildfire reconstruction and resale issues; a post promoting the attorney's webinar and her radio appearance regarding "changes in HOA

20

law in the last year"; and a post about a cooking class the attorney's firm sponsored to help families in need of transitional housing.

Contrary to Mansoir's suggestion, the record contains no indication that these LinkedIn posts expounded substantive law or legal views bearing on any of the types of issues in Mansoir's case. That is, the arbitration between Zokaei, the HOA, and Mansoir largely involved a garden-variety noise and nuisance dispute between two condominium owners that did not implicate a condominium purchase or sale, or post-wildfire construction, or transitional housing, or any then-recent changes in HOA law. Put another way, the record does not bear out Mansoir's claim that the posts pertained to "the very issues that would be adjudicated in arbitration," such that awareness of the LinkedIn screenshots, standing alone, could cause a person to reasonably entertain a doubt about the arbitrator's ability to be impartial in this dispute involving alleged violations of condominium CC&R's. The screenshots of the "liked" posts are simply not evidence of a substantial relationship creating an impression of possible bias. (See *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 505 ["[a]rbitration awards need not be vacated in every case in which there has been some contact between the arbitrator and counsel, particularly when the contact is slight or attenuated," and noting a case where "friendly acquaintance between [the] arbitrator and senior partner of a party's law firm [was] insufficient to show bias"].)

*Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641 (*Nemecek*) is instructive. In that case, an attorney named Horn retained Frank Nemecek and Nemecek & Cole (collectively Nemecek) to represent him in a suit against a former client. (*Nemecek*, at pp. 643–644.) After the trial, and believing Nemecek committed malpractice, Horn demanded Nemecek submit to arbitration. (*Id.* at p. 644.) Nemecek filed a counterclaim for unpaid

21

attorney fees and costs. (*Ibid.*) "The arbitrator presented his disclosure statement to the parties and Horn requested additional disclosure of all matters in which Nemecek appeared before the arbitrator. JAMS responded that no case was found." (*Ibid.*) After evidentiary hearings, the arbitrator ordered the parties take nothing as to their respective claims, but found Nemecek was the prevailing party and awarded him $289,028.85 in attorney fees. (*Ibid.*) Thereafter, Horn hired a private investigator and discovered "the arbitrator and the head of Nemecek's appellate department, Mark Schaeffer, were both members of the Los Angeles County Bar Association's appellate [courts] section executive committee; the arbitrator and Edith Matthai, Nemecek's expert witness in the arbitration, appeared together as panelists for various seminars and were both members of the board of governors of the Association of Business Trial Lawyers; the arbitrator was employed as an attorney at the firm of Brown, White & Newhouse, which represents lawyers in malpractice actions; and Nemecek attorneys appeared before the arbitrator when he was a district court judge in 2006." (*Id.* at p. 645.)

Horn filed a petition to vacate the arbitration award pursuant to section 1286.2, subdivision (a)(6), arguing the failure to disclose the foregoing information would cause a person to reasonably entertain a doubt that the arbitrator would be able to be impartial. (*Nemecek, supra,* 208 Cal.App.4th at p. 647.) The Court of Appeal affirmed the confirmation of the award. (*Id.* at pp. 647–650, 653.) In concluding "the arbitrator's membership with Schaeffer in the appellate committee of the county bar association is too 'slight or attenuated' to require disclosure," the *Nemecek* court noted the appellate committee was comprised of 186 members and there was no indication of any personal or other professional relationship between them.

22

(*Id.* at p. 648, relying on *Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 734 [arbitrator had no duty to disclose where there was no indication of a personal or business relationship, or a close friendship, with a witness and an attorney participating in the arbitration].) Likewise, the court held "it is an unreasonable stretch of the imagination to assume that the arbitrator had a relationship with Matthai that required disclosure" simply because the arbitrator and Matthai participated in the same panels or bar association committees. (*Nemecek*, at p. 649.)

The *Nemecek* court further concluded the arbitrator had no duty to disclose his employment at Brown, White & Newhouse, where the evidence showed the firm handled only three legal malpractice cases aside from cases which the firm defended itself against malpractice claims, and the arbitrator had not worked on any legal malpractice case for the firm. (*Nemecek*, *supra*, 208 Cal.App.4th at pp. 649–650.) Finally, the court determined an arbitrator need not disclose that attorneys in the arbitration had previously appeared before the arbitrator while he was a judge. (*Id.* at p. 650.)

In reaching these conclusions, the *Nemecek* court explained that " ' " 'ordinary and insubstantial business dealings' " arising from participation in the business or legal community do not necessarily require disclosure' "; indeed, " '[b]ecause arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business contacts in the particular field.' " (*Nemecek*, *supra*, 208 Cal.App.4th at pp. 646–647.) Nonetheless, the court cautioned that if "these relationships are substantial and involve financial considerations creating an impression of possible bias, they must be disclosed." (*Id.* at p. 647.) Here, there was no evidence of any financial or business dealings, or a close friendship, between the arbitrator and the HOA attorney. Without more, the screenshots merely

reflecting the arbitrator's likes of the HOA attorney's LinkedIn posts did not amount to evidence of a substantial relationship creating an impression of possible bias.

In sum, Mansoir has not persuaded us that the arbitration award must be vacated based on the arbitrator's failure to disclose the identified online interactions on LinkedIn. In so concluding, our opinion should not be understood as holding that "likes" on social media websites cannot raise significant questions regarding impartiality. To the contrary, we do not foreclose the possibility that a party may, in a case with different or additional evidence, be able to demonstrate that "liked" content would reasonably cause a person aware of the facts to entertain a doubt that the proposed arbitrator would be impartial. Based on the record before us, however, we simply conclude Mansoir has not made the requisite showing.

### C. Judicial Admission, Res Judicata, and Judicial Estoppel

Mansoir claims the HOA made a judicial admission by not involving itself in the case after Zokaei filed her petition to confirm the arbitration award; and by opposing Mansoir's motion to vacate the award[9] on the ground that Mansoir was bound by the court's ruling confirming the award in Zokaei's matter. Mansoir reasons that the HOA's "position amounted to a judicial admission that it was bound to the ruling confirming the arbitration award as to . . . Zokaei only." We reject this.

"A judicial admission is an unequivocal concession of the truth of a matter and may be made *in a pleading*." (*Humane Society of U.S. v. Superior*

---

[9] The motion to vacate to which Mansoir refers was filed in superior court case no. CPF22517913, the case involving Zokaei's petition to confirm. It was filed on February 23, 2023, the same day the court granted Zokaei's petition to confirm. The court entered judgment in favor of Zokaei on March 3, 2023.

*Court* (2013) 214 Cal.App.4th 1233, 1249, italics added.) "Not every document filed by a party constitutes a pleading from which a judicial admission may be extracted. . . . [P]leadings serve the function of setting forth 'the formal allegations by the parties of their respective claims and defenses, for the judgment of the Court.' (Code Civ. Proc., § 420.) 'The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints.' (Code Civ. Proc., § 422.10.) When these pleadings contain allegations of fact in support of a claim or defense, the opposing party may rely on the factual statements as judicial admissions." (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.)

Here, Mansoir cites no authority suggesting that an opposition brief to a motion to vacate an arbitration award is a pleading from which a judicial admission can be extracted. In any event, the HOA's opposition argued, in full, that the motion should be denied because (1) Mansoir filed a notice of appeal divesting the trial court of jurisdiction; and (2) Mansoir's motion to vacate had been decided by the court's judgment confirming the arbitrator's award on March 3, 2023 (see *ante*, fn. 9), and therefore his motion was barred by res judicata and collateral estoppel. The HOA did not, as Mansoir seems to suggest, judicially admit that the judgment issued in Zokaei's favor precluded the HOA from seeking its own judgment concerning its portion of the award.

Mansoir next alleges the HOA's award should be barred because the HOA "judicially admitted that it was bound by the fee award as to Respondent Zokaei." Again, these arguments rest on the false premise that

25

the HOA judicially admitted Zokaei's judgment precluded it from seeking its own portion of the award.[10]

To the extent Mansoir suggests res judicata precludes the HOA from obtaining a judgment in conformity with the award because it did not interject its request for such a judgment in the proceeding concerning Zokaei's petition to confirm, we are unpersuaded.

"The prerequisite elements of res judicata in its claim preclusion form are (1) the claim in the present action must be identical to a claim litigated or that could have been litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185.)

Here, Zokaei's petition to confirm the award asked only that judgment be entered for the amount awarded to her. The HOA was named as a party in Zokaei's petition to confirm (§ 1285 ["The petition shall name as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award"]), and Zokaei's proceeding resulted in an order granting judgment in favor of Zokaei and against Mansoir in the sum of $188,236.74. But by confirming the award and rejecting Mansoir's petition to vacate it, the court effectively confirmed the award in the HOA's favor, too. (§ 1286 ["If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made"].) Thus, confirmation of the arbitrator's award would seem to entitle the HOA

_____

[10] Additionally, judicial estoppel is an equitable doctrine, so "whether it should be applied is a matter within the discretion of the trial court." (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46–47.) Mansoir does not contend, much less establish, that the trial court abused its discretion in declining to apply the doctrine of the judicial estoppel.

to a judgment "in conformity" with that award and all its components, not preclude it.  (See § 1287.4.)  Notably, Mansoir cites no authority holding or otherwise suggesting it was error for the HOA to file its own petition to confirm the arbitration award and seek entry of judgment on the portion of the award in its favor.  To the contrary, the law recognizes the authority of trial courts to enter separate judgments when there are multiple parties in a proceeding.  (See §§ 578, 579.)

**DISPOSITION**

The judgments are affirmed.  Zokaei and the HOA are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.


*Zokaei v. Mansoir* (A167365) & *2718 Octavia Street Homeowners' Association v. Mansoir* (A168550)